STATE v. JAMES GREEN.

*Burning Gin-house—Evidence—Indictment.*

1. It is never never necessary to show a motive for the commission of a crime in order for a conviction. But when the prosecution relies upon circumstantial evidence, it is always competent to introduce evidence tending to prove a motive.

2. So, in an indictment for burning a mill, after evidence has been introduced tending to convict the prisoner, the prosecution may offer evidence tending to show that the prisoner was to be paid for committing the crime, and his declarations shortly before the fire, that he had no money, but expected to have some soon, and the fact that shortly after the fire he did have money, are competent.

3. The indictment in this case, set out in full in the opinion, sufficiently charges the crime of burning a gin-house, created by section 985, sub-division 2 of *The Code.*

(*State* v. *Thorn,* 81 N. C., 555 ; *State* v. *Watts,* 82 N. C., 656, and *State* v. *Upchurch,* 9 Ired., 454, cited and approved).

INDICTMENT for burning a gin-house, tried before *Shepherd, Judge,* and a jury, at Fall Term, 1884, of CUMBERLAND Superior Court.

There was a verdict of guilty, and the defendant appealed from the judgment thereon.

The facts are fully set out in the opinion.

*Attorney General* and *T. H. Sutton,* for the State.
*Messrs. Z. B. Newton* and *W. A. Guthrie,* for the defendant.

ASHE, J. The defendant was charged with burning a gin-house, the property of C. A. Martin and another.

The indictment is as follows, to-wit: "The jurors for the State upon their oath present, that James Green and Hardy Williams, late of the county of Cumberland, on the 10th day of October, A. D. 1883, with force and arms, at and in said county, unlawfully, wilfully, maliciously and feloniously, did set fire to, and burn, a certain gin-house then and there in the possession and the property of Cyrus A. Martin and James F. Martin, with intent to destroy the same, and with intent to injure and defraud the said Cyrus A. Martin and James F. Martin, contrary to the form of the statute," &c.

The gin-house in question was burned on a Wednesday night, about the middle of October, 1883, and was the work of an incendiary, and kerosene oil and spirits of turpentine were used by him.

The defendant was charged with the offence, arrested, indicted and tried. The evidence against him was entirely circumstantial. It was in evidence among other things that J. D. Warrel and Louis Warrel owned a steam gin about one-half of a mile from the scene of the fire, and they were not on friendly terms with the Martins, who owned the gin that was burned. They both ginned cotton for toll. That Austin McArthur and the defendant were in the employment of the Warrels in operating their gin, and the defendant had so been for some years. That, at the time of the fire, the defendant, with his wife, occupied the same house with McArthur and Roxana, his wife, which was about a half or three-quarters of a mile from the scene of the fire, and about the same distance from Warrel's gin. Louis Warrel lived about a mile and a half from Martin's gin, and from J. D. Warrel.

That, on the Wednesday evening of the fire, McArthur and the defendant, about sun-down, accompanied by one Brooks, were returning home from their work at Warrel's gin, the defendant carrying a jug of turpentine, and he was heard to whisper to McArthur something about the jug, when McArthur asked him what he was going to do with it, and defendant replied, " never

mind, you will hear of the d—est racket you ever heard of to-night." He said he got the turpentine from J. D. Warrel's tur-pentine still. That, when they reached home, the defendant sat on the front steps, seemed frightened, declined to eat supper, went off, and, after staying half an hour, returned and resumed his seat on the steps; and on being asked by McArthur's wife, what was the matter with him, he said, "never mind, you will know to-night by the sky being illuminated."

Upon the discovery of the fire in the night, McArthur first went to the fire, and was soon followed by the defendant. On their return from the fire there was some conversation about a certain track near the fire which defendant said, was one of the Warrels. Before reaching the house they met their wives and McArthur and his wife discovered the smell of turpentine.

The next day, as McArthur and defendant were on the way to their work, defendant said, "I know who burnt the gin; I have got no money now, but in a few days I will give you some to keep your d—— mouth shut." Similar remarks were made by defendant to McArthur at the fire. This evidence was received without objection.

The State then offered to prove by Roxana McArthur, that on the morning after the fire, she heard the defendant ask his wife to lend him some money, and upon her refusal, he said, "never mind, I have no money now, but I will be d—— if I don't have some soon, and if Arthur (meaning McArthur, who was present) would keep his d—— mouth shut, he would let him have some."

This testimony was objected to by the defendant, but admitted by the court, and the defendant excepted. The State proposed to prove that after the defendant was arrested and was on his way to jail, no violence having been used, nor threats made, nor inducements held out to him, upon his being informed of the charge against him, he said, "I don't care what you do, Jem and Lem Warrel have got a plenty of money, and I don't care what the h—l you do, money will keep me right." This evidence

was admitted by the Court after objection by the defendant, and he excepted.

There was then a good deal of other evidence offered by the State, tending to establish the guilt of the defendant, and among other the testimony of one Goddin, who testified that the defendant owed him some money, and about a week after the fire the defendant met him in the road and pulled out of his pocket a handful of silver, which looked like as much as five dollars, and paid him. The defendant objected to this testimony, and upon its admission by the Court, excepted.

Another witness was introduced by the State, who testified that about a week after the fire defendant gave him a five-dollar bill to have changed. The admission of this testimony was also made a ground of exception by the defendant.

The jury having found the defendant guilty, he moved in arrest of judgment, on the ground that there is but one count in the indictment, and that two distinct statutory offences are blended in one count. The motion was overruled by the Court, and judgment was pronounced against the defendant, from which he appealed.

All the evidence to which the defendant has taken exception bears upon the same point, and was offered by the State, for the purpose of showing a motive on the part of defendant to commit the crime with which he was charged. It is never indispensable to a conviction that a motive for the commission of the crime should appear. But when the State, as in this case, has to rely upon circumstantial evidence to establish the guilt of the defendant, it is not only competent, but often very important, in strengthening the evidence for the prosecution, to show a motive for committing the crime. That was the purpose of the State in offering the evidence excepted to. It was the theory of the State that the motive of the defendant was the hope of reward, and that he had been promised remuneration in money by some one, for setting fire to the gin. The evidence offered upon that point was certainly pertinent to that inquiry. It tends to show by the

defendant's own declarations that he had no money before the burning, but that he expected to have money shortly after the burning; and that he did have money very soon thereafter, some of which he would give to McArthur if he would keep his mouth shut.

It was evidence rightfully admitted and properly submitted to the jury to be considered by them in ascertaining the motive which prompted the defendant to commit the crime. For "where it is shown that a crime has been committed, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, although remote, are admissible in evidence. The jury, however, cannot be too cautious with respect to the importance they attach to this species of evidence." *Roscoe Crim. Ev.,* 88, note 1, and cases there cited. Our conclusion is that none of the defendant's exceptions can be sustained.

The defendant's ground for his motion in arrest of judgment is quite as untenable as his exceptions. His counsel are altogether mistaken in supposing that two offences, the one created by sub-div. 2, and the other by sub-div. 6 of section 985 of *The Code,* are blended into one. The indictment is for a violation of the provisions of sub-div. 2 of that section, and even if it was the intention of the draftsman to draw the bill under sub-div. 6, it can be sustained under sub-div. 2.

It certainly cannot under sub-div. 6, for a gin is not one of the buildings it is made unlawful to burn by that sub-section.

Sub-div. 2 is the act of April 10th, 1869, and makes the wilful burning of any gin-house, &c., an indictable offence; and sub-div. 6 is the act of March 22, 1875, which makes it indictable to burn certain enumerated houses, but a gin-house is not one of them.

The case of *State* v. *Thorn,* 81 N. C. 555, is decisive of this case. That was an indictment for unlawfully, *maliciously* and feloniously burning a gin-house. The Court was asked to charge the jury that the defendant could not be convicted under the act of 1869, because the burning was not charged to have been *wil-*

*fully* done. The Court held that the word *maliciously* was more comprehensive and included wilfully, and that although the indictment could not be sustained under the act of 1875, because in that act gin-houses are not embraced, it could be under that of 1869. For, say the Court, "while the indictment makes the allegation not required by the act, it embodies every charge essential to the constitution of the crime, and the unnecessary averments may be treated as harmless surplusage. They do not vitiate a verdict which finds them all to be true, nor afford ground for arrest of judgment;" and to the same effect is the decision in *State* v. *Watts*, 82 N. C., 656, where it is held, upon the authority of *State* v. *Upchurch*, 9 Ired., 454, that "where a person is indicted for an offence, as for a *felony*, when in fact it is no *felony*, but only a misdemeanor, he may be convicted of the latter offence. The use of the word *felony* in the indictment does not raise the grade of the offence, and make that *felony* which is no *felony*."

There is no error. Let this be certified to the Superior Court of Cumberland county, that the case may be proceeded with according to law.

No error. Affirmed.