THE STATE v. ALECK MORTON.

*Witness—Evidence.*

1. Where the tendency of the cross-examination of a witness is to attack his credibility, or his relation to the facts about which he testifies is such as casts suspicion upon his statements, evidence of other circumstances connected with those deposed to by him, and of his prior consistent declarations, is admissible as corroborative testimony.

2. Upon a trial for murder, a witness for the State testified that he was present at the time of the killing, and identified the prisoner as the perpetrator of the act. Soon after, a number of persons assembled at the place, and, in the presence of the witness, accused persons other than the prisoner of the crime, to which witness made no response: *Held*, that his silence, under such circumstances, was a fact going to his discredit, and it was error to exclude the evidence of it from the jury.

Indictment for Murder, tried at August Term, 1890, of the Superior Court of LENOIR County, *Armfield, J.,* presiding.

The prisoner was indicted for the murder of Julia Emery, *alias* Julia Morgan. Upon her arraignment, she pleaded "not guilty."

On the trial, the State introduced as a witness Giles Parker, who testified to facts and circumstances that tended strongly to prove the guilt of the prisoner. Among other things, he testified that, about the middle of July last, he received an anonymous letter through the post-office, which he destroyed. Its contents tended to show that she was jealous of the deceased, and made threats against her. He said: "The letter was not signed. Eight or ten days after I got the letter, I went to see prisoner and asked her if she wrote me a letter. She said she did. I asked her how she got it to the office. She said she hired a black boy to carry it. I asked what Julia Morgan had done to her, and why she wanted to shoot her," etc., etc.

The State introduced, next after the witness mentioned above, Jacob Cox, a colored boy of the age of twelve years, who, under objection of the defendant, was permitted by the Court to testify: "I brought a letter to the office for prisoner. She told me not to let anybody see it but Mr. Hunter. She gave me one cent for bringing it, and gave me five cents. after that. This was in July, about one month ago."

The defendant excepted to the admission of the testimony of Cox concerning the letter.

On the cross-examination of Ann Emory, mother of deceased, a witness for the State, defendant's counsel offered to prove by the witness that, on the night of the homicide, in the presence of Giles Parker (above mentioned), other persons, and not the prisoner, were accused of the homicide, and that Parker said nothing, without previously asking Parker if this was so. The proposed testimony was excluded, and defendant excepted.

There was a verdict of "guilty" and judgment of death, from which the prisoner appealed to this Court.

*The Attorney General,* for the State.
*Mr. George Rountree,* for the defendant.

MERRIMON, C. J.—after stating the facts: The first exception is unfounded in any aspect of it. The letter referred to by the witness Parker was important and competent evidence tending to show unfriendly motive and hostile purpose of the prisoner towards the deceased shortly—two or three weeks—before the homicide. The nature of the testimony of that witness, and the character of the cross-examination of him, manifestly showed a purpose to impeach him, and particularly to question the accuracy of what he said in respect to the letter. It was, therefore, competent for the State to prove pertinent facts and circumstances corroboratory of this witness as to what he said in respect to receiving the letter—how he got it, the time, and the person from whom he received it. He testified that he received an anonymous letter about the middle of July last through the post-office; that eight or ten days afterwards he saw the prisoner, and she said, in response to his inquiry, that she had written him a letter about that time, and that she sent the same to the post-office by a colored boy. The witness, a colored boy, testified that about the time mentioned—about a month before he was testifying—at the request of the pris-

oner, he took a letter for her to the post-office, with the caution given him not to let anyone see it except a person mentioned   This evidence, not very definite of itself, taken in connection with the testimony of the impeached witness, tended, perhaps not very strongly, to show that the latter witness had received a letter from the prisoner about the time mentioned by him, and that the prisoner sent the same through the post-office   The evidence tended to strengthen what the impeached witness said, and to increase the probability that it was true.  If the evidence of the colored boy had been more definite as to time, and he had testified that the letter was addressed to the witness Parker, or that the prisoner had said that it was for him, then it had been much stronger, but as it was, it had some relevancy and point taken in connection with other evidence, and it was the province of the jury to determine its weight and force. *State* v. *Green,* 92 N. C., 779; *State* v. *Whitfield, id.,* 831, and the cases there cited; *State* v. *Freeman,* 100 N. C., 429.

The second exception must be sustained.  If the witness Parker was present on the night of the homicide at the place where it was perpetrated, and had knowledge of the facts and circumstances as to which he testified, going so strongly to show that the prisoner was the guilty party, and heard persons accuse others than the prisoner of the crime, and he said nothing to the contrary, that he did not, in the absence of explanation, was a fact going to his discredit and competent to go to the jury on the trial as tending to impeach his testimony; he was not bound, then, to deny the truth of such accusation, or to tell the facts of which he had knowledge pointing to the prisoner as the guilty party, but it was unusual and singular that he did not.  Without some cause prompting him to silence on such an occasion, it is improbable that he would have heard innocent persons accused of so grave a crime and said nothing in their favor, when he knew, or had very strong reasons to believe, that they were

innocent and the prisoner was not. If such accusations were so made, silence on his part—no cause for it appearing—fairly implied that he acquiesced in such accusations, and that he did not know of the guilt of the prisoner. Such silence was some evidence to show that he did not then know of her guilt, or of the facts tending so strongly to prove it, as he testified he did, and she was entitled to the benefit of it as going, in some degree, to impeach his testimony.

In *Radford* v. *Rice*, 2 Dev. & Bat., 39, this Court said: "Certainly, also, it (the testimony) might be impeached by proof of declarations made by him at variance with the testimony. A declaration of another in his presence and hearing, and not contradicted, is proper to be submitted to the jury as evidence that he acquiesced in and admitted the truth of such declaration." This was afterwards reiterated in *State* v. *McQueen*, 1 Jones, 177. See also *Guy* v. *Manuel*, 89 N. C, 83; *State* v. *Suggs, id.*, 530; *State* v. *Burton*, 94 N. C., 947.

The evidence offered and rejected was not as to a matter collateral to that as to which the witness Parker had testified. It would tend to show that he had made—assented to—statements inconsistent with his testimony in respect to the very matter about which he was examined. In such case it was not necessary to inquire of the witness before offering the disparaging testimony whether he did not assent to the accusation of persons other than the prisoner at the time mentioned. *State* v. *Patterson*, 2 Ired., 345. It was certainly relevant to, and bearing directly upon, the issue to show that the whole or any material part of the testimony of the witness was not true, and evidence directly tending to prove this was competent.

The prisoner is entitled to a new trial.                    Error.