## STATE v. H. W. BRABHAM.

*Homicide — Circumstantial Evidence — Corroboration — Identity — Prayers for Instruction — Charge — Jury — Exceptions — Remarks of Doubtful Propriety by the Court.*

1. The manner and conduct of the defendant an hour after the homicide for which he was indicted is admissible in evidence, and, taken with other circumstances, may have serious import in establishing his guilt.

2. Where there was evidence tending to show that the wound by which the deceased came to his death was inflicted by a coupling-pin ; that a man, like the prisoner, had been seen the night of the homicide to drop out of his pocket a piece of iron about the length of a coupling-pin, which he wrapped in a white cloth, and that something like iron-rust was afterwards found upon a handkerchief in his pocket : *Held*, testimony that the coupling-pin was found near the house where the prisoner boarded was admissible.

3. One witness may be allowed, for purposes of corroboration, to testify that another identified a coat whose identity was in question, without first asking him who identified it if he did so.

4. A substantial compliance with prayers for instruction is no ground for exception.

5. It is no ground for exception that the Court stated that "there was no evidence to contradict the State's witnesses" where there was none, and then immediately qualified this by the further statement that questions of contradiction among the witnesses must be determined by the jury.

6. Exceptions too general will not be considered by this Court.

7. Remarks by the Court of doubtful propriety are not ground for exception where it appears they did no harm to the prisoner.

This was a CRIMINAL ACTION, tried at April Term, 1891, of MECKLENBURG Criminal Court, before *Meares, J.*

The facts are set out in the opinion.

*The Attorney General,* for the State.
*Messrs. J. D. McCall* and *W. H. Bailey* (by brief), for defendant.

SHEPHERD, J.: The *first exception* is addressed to the admission of testimony as to the manner of the prisoner shortly after the commission of the homicide. The testimony tended to show that the homicide was committed between eleven and twelve o'clock on Saturday night the 11th of April, 1891; that about twelve o'clock of the same night the prisoner went to the room of the witnesses Wyche and Davis; that his actions there were unnatural; that he spoke hurriedly and in a low tone, and that his hand trembled and he seemed nervous.

Such testimony alone would raise but a slight conjecture of the prisoner's guilt, but, taken in connection with the other facts in evidence, was very clearly relevant. The evidence offered by the State was entirely circumstantial in its nature, and in such cases, facts, which are in themselves of but trifling significance, may become of serious import in view of their relation to other circumstances attending the transaction. " Everything calculated to elucidate the transaction is admissible, since the conclusion depends upon a number of links which alone are weak, but taken together are strong and able to conclude." *McCann* v. *State,* 13 Smedes & Mar., 471.

As bearing directly upon the particular point under consideration we cite the case of *Campbell* v. *State,* 23 Ala., 69. See also Wharton's Cr. Law, 3520.

The *second exception* is to the testimony of the witness Griffith, " that the (coupling) pin was found on the sidewalk near Pemberton's house where the prisoner boarded."

There was evidence tending to show that the mortal wound was inflicted with an iron coupling-pin, which was found on the floor near the deceased. The witness stated that this coupling-pin was like the one seen by him on Saturday morning lying in the grass twenty-three steps from the boarding-house of the prisoner, and that on Sunday he looked for it and it had disappeared.

One R. J. Johnson testified, that on the night of the 11th of April he came by Mocca's store and saw a colored man standing against the window, with his hand behind him, and that he saw him drop a piece of iron about the length of the coupling-pin introduced in evidence, and that he took it up and wrapped it in a whitish colored cloth of some kind and put it in his pocket. This witness also stated that he did · not know that the prisoner was the man he saw, but that he had the same color and height, wore a brown overcoat and "looked in appearance like the prisoner." It was also in evidence that a handkerchief, soiled apparently with rust, was found in the pocket of the prisoner's overcoat, and that the pocket of the overcoat was "torn or ripped."

For the reasons given in passing upon the first exception, we think that the testimony was admissible and should have been submitted to the jury. *State* v. *Christmas,* 101 N. C., 749; *State* v. *Bruce,* 106 N. C., 792. In this connection, we will state that the *sixth exception,* as to the admissibility of the testimony of Johnson, is plainly untenable and should also be overruled.

The third exception (the only one argued in the brief of the prisoner's counsel) is, that the Court "allowed [the] witness Baker to testify that Benny Mocca identified the coat at the police office (or guard-house) without Benny having been first asked as to the fact, *i. e.,* whether he did so identify it."

Benny Mocca, the son of the deceased, had been examined, and testified that the overcoat produced upon the trial was the same as that worn by the prisoner at the shop of his deceased father on the night of the homicide. This overcoat was identified by other witnesses as the one taken from the valise of the prisoner and identified by Benny at the guard-house in the presence of the witness Baker and the prisoner.

Whatever may be the ruling in other States upon the subject, it is well settled in North Carolina that such testimony

as Baker's is admissible for the purpose of corroborating a witness who has been impeached, or stands in such a relationship to the parties or the action, as to subject his testimony to suspicion or discredit.   *Jones* v. *Jones*, 80 N. C., 247; *State* v. *Boon*, 82 N. C., 648; *State* v. *Whitfield*, 92 N. C., 831.

No point, however, is made as to whether the witness Benny Mocca had been impeached, but the exception is based entirely upon the failure of the State to ask him when on the stand whether he had, in effect, made such a statement as to the identity of the overcoat at the guard-house.

Such preliminary questions are necessary where it is proposed to discredit a witness by proof of conflicting statements concerning collateral matter indicating bias feeling, and the like (*State* v. *Morton*, 107 N. C., 890, and cases cited), and this is because the witness should have an opportunity of explaining such statements (*State* v. *Wright*, 75 N. C., 439), but this reason has no application where the purpose of the testimony is to sustain the witness, and we have been unable to find any authority in support of such a principle.   Testimony of this character was admitted without preliminary inquiry in *State* v. *Dove*, 10 Ired., 469, and *State* v. *Ward*, 103 N. C., 419, and we do not understand that any practice to the contrary has generally obtained in this State.

We cannot see how the testimony is open to the grave objections urged by counsel.   Benny, on the trial, identified the coat then exhibited as that worn by the prisoner.   This was *substantive* testimony.   Baker simply testified that before the trial and at the guard-house the same witness had, in effect, made a similar statement about the same overcoat.   This was only *corroborative* testimony, and admitted alone for that purpose, and we must assume, in the absence of any exception in this particular (the entire charge as to the recapitulation of the evidence not being set forth), that as such only it was submitted to the jury.   *State* v. *Powell*, 106 N. C., 637.

· The fourth exception is " because his Honor refused to give the instructions as prayed for by the prisoner, and, without giving·the first, instructed the jury that it was not denied by the State." The latter part of this exception seems to be founded upon a misapprehension, as the Court not only stated that the propositions of law contained in the first instruction were substantially correct, but actually gave them in almost the precise language as prayed for. Upon a careful scrutiny of the charge, we are of opinion that it substantially responded to all of the instructions requested by the prisoner.

In *State* v. *Parker*, Phil., 475, PEARSON, C. J., said that all that the law requires is, that the jury shall be clearly instructed that unless, after due consideration of all the evidence, they are " fully satisfied," or " entirely convinced," or " satisfied beyond a reasonable doubt," of the guilt of the -prisoner, it is their duty to acquit, and every attempt on the part of the Court to lay down a " formula" for the instruction of the jury by which to "gauge" the degrees of conviction has resulted in no good. *State* v. *Sears*, Phil., 146; *State* v. *Knox*, *ibid.*, 312; *State* v. *Gee*, 92 N. C., 756. His Honor told the jury that every material circumstance relied upon by the State must be established beyond a reasonable doubt, and "that material circumstances were those circumstances in the case which pointed to the guilt of the prisoner, and that the material circumstances relied on, and which were established beyond a reasonable doubt by the State, must be so strong as to exclude any reasonable hypothesis of the innocence of the prisoner." This surely was as favorable to the prisoner as the law permits, and we have no hesitation in overruling the exception.

The fifth exception is also without merit. It was true, as stated by the Court, that the prisoner offered no evidence to contradict the testimony of the State's witnesses. This was but the statement of a fact, and was relieved of any possible

prejudicial effect by its immediate connection with the remarks, that "whether there was any contradiction between any of the witnesses in the case, is a question to be determined by the jury. The Court cannot express any opinion upon the testimony." Neither was there error in stating that, in the absence of testimony to the contrary, every witness was presumed to be of good character. It will be observed that in this connection the jury were told that although a witness was of good character, they were not bound to believe him if his statements were unwarranted, etc.

The seventh exception, "to the charge as a whole," is too general to be considered. State v. Nipper, 95 N. C., 653, and McKinnon v. Morrison, 104 N. C., 354.

The eighth exception—while we doubt the propriety of the remark of the Court as to what some writers had said about the reliability of circumstantial testimony, we are sure that the jury could not have understood that such was the opinion of his Honor in respect to this case, or that they were to be influenced by it in the slighest degree. This very clearly appears from the immediately succeeding language, in which the jury were referred to a former part of the charge as to the degree of proof requisite to a conviction.

The ninth and tenth exceptions are not sustained by the record, which very plainly fails to disclose that his Honor charged "that where a witness' character is not assailed, he is to be believed." These exceptions are also overruled.

After a careful examination of the whole record, we are of the opinion that the case was fairly tried, and that there is no reason why the verdict of the jury should be disturbed. There is no error.

Affirmed.