Indictment charging Charles B. Plyler, George Mayhew and John McManus with the murder of Carter Parks.
The defendant McManus was acquitted. The court below has now under advisement a motion to set aside the verdict as to defendant Mayhew as being against the weight of the evidence.
The defendant Plyler was convicted and sentenced to death. From the judgment of the court he appeals.
The facts are fully stated in the opinion of Justice Brown.
1. The prisoner excepted to the refusal of the court (632) below to remove the cause for trial to some adjoining county.
As admitted in the brief of the learned counsel for the prisoner it has been repeatedly decided by this Court that a motion to remove is almost always a matter within the sound discretion of the nisi prius judge and not reviewable here. Pell's Revisal, sec. 426, and cases cited.
We find nothing in the record which takes this case out of the general rule.
2. The prisoner excepts to the ruling of the court permitting the introduction of evidence by the State tending to prove that not long before the homicide the deceased had been called out on the piazza of his residence at night, shot at and wounded, as contended by prisoner, by an unknown person. The prisoner's contention is evidently based upon the theory that there is no evidence connecting the prisoner with this particular affair. Upon that theory the authorities cited by the learned counsel support the objection to the evidence. *Page 516 
In this case, however, there is abundant evidence, which, if believed, tends to prove not only that the deceased was shot on the occasion in question, but that the prisoner either did the shooting himself or was present in person aiding and abetting it.
The witness Richardson testified that the prisoner, just before the shooting occurred, said to witness, "You go back over there to Carter's house and get him on the porch and get him drunk; I am going to get him." The same witness said he was at deceased's house the night when the shooting occurred, and that he recognized defendant outside by his voice. Again, he testified that on another occasion, while defendant was talking to him about Carter, he (defendant) said: "Pace, I ain't afraid of nobody. I shot one man, and I am the very damned frog that muddied the pond."
In addition to this, the record shows other matters tending to connect the defendant with the first shooting, amply sufficient to convict him of the crime if he had been indicted for it.
It early became necessary for the protection of society that courts should permit the evidence of circumstances to establish the guilt of persons accused of crime. For this purpose many independent (633) facts are permitted to be proven, which taken collectively point to a certain conclusion. It has been well said: "Where the particular fact offered to be proved is equally consistent with the existence or nonexistence of the fact sought to be inferred from it, then the evidence can raise no presumption either way and should be excluded."Rodman, J. S. v. Vinson, 63 N.C. 335; S. v. Brantley, 84 N.C. 769.
If there was nothing to connect the prisoner with this particular shooting testified to by Richardson, it would be a collateral fact from which no inference could reasonably be drawn injurious to the prisoner and would therefore be incompetent. But when his extraneous crime has been brought home to the prisoner, then the fact becomes competent, because it is much more consistent with his guilt than it is with his innocence, of the crime of shooting the same person a short while after. S. v. Alston,94 N.C. 932; 1 Wharton Crim. Law, secs. 631-670. A previous attempt by the prisoner to assassinate his victim is very potent evidence of the quoanimo, the motive, and of a fixed purpose to take the life of the deceased.
There are a number of illustrative cases cited in Lawson on Presumptive Ev., 589, directly in point, some of which we cite: V is indicted for shooting at P with intent to kill. Proof that V at a previous time had shot at P is relevant. S. v. Voke, R. R., 531.
A was indicted for poisoning his wife by giving her laudanum. The *Page 517 
fact that A had on a former occasion given her laudanum, which made her sick, is relevant. Johnson v. State, 17 Ala. 622.
In Rex v. Dorset, 2 C. K., 306, defendant was charged with having willfully set fire to a haystack. The fact that, on a previous day, the rick was seen to be on fire and the defendant to be near it, was held relevant. While the cases cited by counsel for prisoner recognize the general rule that evidence of a distinct substantive offense can not be admitted in support of another offense, they also recognize the exceptions, within which the fact sought to be proved in this case clearly falls.
3. The prisoner excepted to evidence of a declaration made to P. P. W. Plyler, who testified that prisoner came to his house about 1 o'clock on the night that he gave himself up to the officers (634) and said he wanted to talk some about the case. He said "he did not do the shooting, but he knew who did it, and did not want to tell it for fear of what the man would do to him if they did not put him where he could not get to him; that he said he would kill him if he told, and he was a dangerous man."
This was both relevant and competent. The fact that the defendant went at 1 o'clock and waked witness and wanted to talk about the shooting, was conduct on the part of the defendant which the jury was entitled to consider along with the other evidence.
"Everything calculated to elucidate the transaction is admissible, since the conclusion depends upon the number of links, which alone are weak, but taken together are strong and able to conclude." S. v. Bradham,108 N.C. 794.
Other declarations of the prisoner were introduced, over his objection, which we think were clearly competent, but it is unnecessary to notice them more particularly.
4. The prisoner introduced a witness, Starnes, and asked him this question: "State whether or not, in your opinion, Charlie Plyler could have walked from the barn the straightest line to the scene of the killing while you were going the distance to where you heard the gun fire." This was excluded by the court. He was then asked if it were possible for any man to have done it. This was also excluded.
One of the points made by prisoner in his defense is that he could not have walked from his premises where he was seen at a certain hour to the scene of the homicide in time to have fired the gun that is supposed to have killed deceased.
Evidence of the distance, character of the earth's surface, thickness of the woods, etc., was offered and received to establish prisoner's contention.
It was not proper, therefore, for the witness to pass on that *Page 518 
contention. The rule in opinion evidence is that if all the facts are before the jury or can be placed there, then it is not competent for the witness to express his opinion upon such facts, as the jury can equally well draw the inference for themselves.
"If the jury can judge for themselves on this matter equally (635) as well as the lay witness, it is obvious that it would be a waste of time to ask for any testimony from him or from a dozen or a hundred other persons no more capable than he of adding to the jury's own information." Greenleaf Evidence, 526.
The prisoner, however, got the full benefit of Starnes' knowledge because on cross-examination by the State he testified, against prisoner's objection, that he traversed the space between the barn and the scene of the homicide in three minutes. This evidence was not only competent, but was positive testimony to a material fact and was well calculated to assist the jury in determining whether or not it was possible for the prisoner to get to the scene of the homicide before the report of the gun was heard by a witness who had passed Plyler's place and seen him, and then gone some distance up the road. This witness had testified that it took him ten or fifteen minutes to go from the house to the place where he was when he heard the report of the gun.
5. We come now to the most important exception and one which impresses us with a deep sense of responsibility in a case of this gravity. The prisoner contends that, taking all the evidence to be true, it is not sufficient in probative force to warrant a conviction, and that the court erred in not directing a verdict of not guilty.
We have scrutinized the evidence with that care which the importance of the case demands, and have no hesitation in concluding that his Honor was fully justified upon the evidence in denying the prisoner's prayer. It is not necessary to go into the evidence in detail, but we will briefly refer to its salient features.
The deceased was a brother-in-law of prisoner and a near neighbor. He left his home Wednesday about six P. M. and was last seen going towards a spring in the woods near which his dead body was found on Friday following. That he was foully murdered by some one, who shot him in the back of the head from behind a tree, is manifest.
About the same time the deceased was seen going towards the spring, the prisoner, with two others, was seen to start from prisoner's premises in same direction, the prisoner saying, "Let's go and do what we said we were going to do." The woods extended from the place of (636) the homicide up to prisoner's smoke-house, where he was seen by one witness ten or fifteen minutes before the gun fired which was supposed to have killed the deceased.
There is abundant evidence of ill will, bad blood motive, and *Page 519 
especially an attempt by prisoner to assassinate deceased at night by shooting him on his piazza from ambush a short while before the homicide. There is evidence of threats to kill made not long before the homicide. After the discovery of the body there is evidence that prisoner attempted to induce certain persons to "keep their mouths shut." Declarations of the prisoner, as well as his acts, tend to prove that he knew who killed Parks and all about the homicide, but refused to say who it was that committed the murder. There was further evidence that Plyler had a talk with a witness in a restaurant on the day the body was found, in which he said it did not make much difference about Parks being killed; he was a sorry man anyway.
There was also evidence that after the body was found and the investigation began, the defendant tried to escape.
6. Several exceptions are taken to the charge of the court upon the quality of circumstantial evidence and when it is proper to convict or acquit.
This matter has been discussed so much by the courts that we will not "thresh over old straw." We copy that portion of his Honor's charge and give it our full approval as a lucid statement of the law, at which the prisoner has certainly no reason to complain.
"The law says that circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth; and it is essential and when properly understood and applied is highly satisfactory in matters of the gravest moment. The facts, relations, connections and combinations between the circumstances should be natural, clear, reasonable and satisfactory. When such evidence is relied upon to convict, it should be clear, convincing and conclusive in all its combinations and should exclude all reasonable doubt as to guilt. In passing upon such evidence, it is the duty of the jury to consider all circumstances relied upon to convict and to determine whether they have been established beyond a reasonable doubt. If not so established, the circumstance should (637) be excluded from further consideration and have no weight in reaching a verdict. The State puts up a witness here and undertakes to prove a circumstance; you will first determine in your mind, is this circumstance established beyond a reasonable doubt? If you say that circumstance has been established beyond a reasonable doubt, you take that into consideration in determining what verdict you will find.
"After considering the evidence in this way, and determining the circumstances which are established beyond a reasonable doubt, the next thing for the jury to determine is, Do these circumstances exclude every other reasonable conclusion except that of guilt? If so the evidence is sufficient to convict; otherwise, not." *Page 520 
The last objection which the defendant raises is to the fact the jury were told, during their deliberations, of another murder in the same section of the county, which was committed during the trial of this case. The judge presiding took every precaution that he could in the matter. He sent word at once to the officer who had the jury in charge not to let the matter be disclosed to them. This was too late, though, for they had already been apprised of it. We do not think there is anything in this, nothing else appearing, which should entitle the defendant to a new trial. Nothing in the record shows, so far as the record discloses, that the jury took this matter into consideration one way or another.
Upon a review of the entire record, having considered every assignment of error, we are of opinion that they are without merit and that there is
No error.
Cited: S. v. Rowe, 155 N.C. 445.
(638)