STATE v. GEORGE ATWOOD.

(Filed 30 October, 1918.)

**1. Homicide—Murder—Notice—Evidence—Trials.**

When there is sufficient evidence to establish the fact that the prisoner, on trial for murder in the first degree, had committed the homicide, it is competent to show that the deceased had $180 on his person on the evening before his body was found, when he and the prisoner were drinking together, and had only a few dollars the following morning, and that the prisoner soon thereafter, when arrested, had $246 on his person, as tending to show that robbery was the motive of the homicide.

**2. Homicide—Murder—Evidence—Instructions.**

Where the prisoner, accused of murder, has denied committing the crime, and that he had dragged the body from his door and covered up the signs thereof with sand, which the evidence tended to show had been done, and thereafter admitted the killing and dragging the body away, but relied upon justification, it is for the jury to estimate the weight to be given to his explanation, under all the circumstances leading up to the killing and connecting him with it; and a request for instruction that the jury could only consider his removing the body, as it may throw light on the killing, and if this had been done under circumstances justifying it, they could not consider the evidence of the removal of the body as being a crime, was properly refused.

**3. Homicide—Murder—Character—Substantive Evidence.**

Where the prisoner, accused of a homicide, testifies to matter in justification or to disprove inferences to be drawn from the evidence against him, he puts his character at issue, both as a witness and defendant, and the jury may consider the evidence of character as substantive evidence whether he would or would not commit a crime of the kind charged against him.

**4. Appeal and Error—Objections and Exceptions—Restrictive Evidence—Criminal Law.**

Where a witness, charged with a crime, has taken the stand in his own behalf, and the State has introduced evidence of his bad character, he may not complain that it was not restricted to his character as a witness, unless he has asked at the time of its admission that it be so restricted. Supreme Court Rule No. 27.

**5. Criminal Law—Restrictive Evidence—Character—Rebuttal.**

A prisoner charged with a crime, and who has testified in his own behalf, may not put on evidence in rebuttal of that of the State tending to show his bad character, and have it confined to his credibility as a witness.

**6. Homicide—Murder—Deadly Weapon—Malice—Presumptions—Evidence.**

Where a homicide is admitted or proven to have been done with a deadly weapon, the law presumes malice, and the burden is upon the prisoner to show matters in excuse or mitigation.

APPEAL by defendant from *Lane, J.,* at July Term, 1918, of FORSYTH.

The prisoner was indicted for murder and convicted of murder in the second degree, and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*A. E. Holton and Fred M. Parrish for defendant.*

CLARK, C. J. The prisoner was indicted for murder of Ed Hege and was convicted of murder in the second degree. The deceased was killed by a pistol shot which severed the femoral artery. He and the prisoner had been drinking together heavily the evening before, but separated about 1 o'clock at night. A witness for the State testified that he heard the pistol shot from the direction of the prisoner's house about half-past 1 at night, and about 6:30 a. m. he found the body of the deceased lying about one lot distant from the front of the defendant's lot. The prisoner came up, and when asked if he knew who the dead man was, he walked up to the body and, looking at it, said, "No, I do not know him," and went back home. After his arrest, the prisoner admitted to the sheriff that he had killed the deceased, and he and his wife both testified to the fact on the trial. He testified that, hearing some one hail, he went to the door. The person standing out there said he wanted to see him. The prisoner says he asked who he was four or five times, and then told him to move away or tell his business, and that when neither was done, he drew out his pistol and fired; that the deceased then said, "You shot me," and the prisoner says that for the first time he then recognized the voice of the deceased. He says he did not intend to kill the man, but it does not appear that he went out and offered any help. There was a pool of blood where the deceased was standing when he was shot, in front of prisoner's house, and a trail of blood from that spot to the spot where his body was found, and signs that he had been dragged; but over the blood at the place of the homicide and along the trail sand had been swept, and there was some signs of the body having been dragged. At the trial he and his wife testified that they carried the body to the place where it was found, and that by the prisoner's direction the wife had swept sand over the pool of blood and the trail. There was also blood on the prisoner's shoes (one of which had been washed) and on his pants and one of his hands.

The first three assignments of error are to the admission of testimony that about a week before the homicide the deceased had $65 or $70 on his person; that on the afternoon of the homicide he was seen with a roll of greenbacks, and that he was paid $3.50 that afternoon. The sheriff testified that only $2 or $3 was taken out of the deceased's pockets at the

45—176

undertaker's. There was evidence that, the evening before, the prisoner had $180 on his person, and that when arrested he had $246. This evidence was competent upon the State's theory, upon the indictment for murder in the first degree, that robbery was the motive of the homicide. The jury negatived that theory by their verdict. In no view has the prisoner ground to complain.

Assignments of error 4 and 5 are because the judge refused to charge as prayed by the prisoner: "That in passing upon this case, the fact that an effort was made to conceal the act by removing the body cannot be considered by the jury, except as it may throw light upon the act of killing; that if the jury should find that the prisoner shot the deceased under circumstances justifying the killing, then they cannot consider the evidence of removal of the body as being a crime." There was no error in refusing to so charge. The jury was entitled to all the circumstances which led up to the killing, which explained it or connected the prisoner with the homicide. *S. v. Brabham,* 108 N. C., 793; *S. v. Plyler,* 153 N. C., 634. His action in attempting to dispose of the body, so as to divert suspicion from himself, was a relevant circumstance, tending to show guilt, and it was for the jury to estimate its weight, and whether his explanation and the motive he assigned were truthful or otherwise. The judge stated in a plain and correct manner the evidence and the contention for the prisoner on this point, and nothing more was necessary. If the jury found, as the prayer requests, that the prisoner was not guilty, because he killed the deceased under circumstances making it justifiable, it was unnecessary to add that "then they cannot consider the evidence of removal of the body as being a crime."

The prisoner excepted, further, that the court erred in allowing counsel for the State to argue to the jury: "That the character of the defendant shows that he is a person who would commit just such a crime as the one with which he was charged"; and also that the court charged as follows: "The prisoner contends, further, that in reply to evidence of his conviction of violation of law, that for recent months he has been a man of good character; that he was a man of good character, for truth and honesty; that he was worthy of belief, as far as testimony was concerned; and that there was evidence of his good character. Now, you can consider evidence of character as to the prisoner as substantive evidence, as testimony to show whether he would or would not commit such crime as he is charged with; also upon his credibility as a witness."

The prisoner, on cross-examination, admitted that he had been sentenced to the county roads for six months, and, having escaped, was carried back and served out his time; that he had been indicted twice in Forsyth County and that he had a pistol in his pocket the evening before. The witness Lincoln Pope testified that he had known the prisoner

for eight years; lived wtihin half a mile of him, and that his general character was bad. J. J. Cofer testified that he had known the prisoner eight or ten years; that his general character was bad. On cross-examination, he said it was bad for selling liquor and resisting officers and being a dangerous man. L. Newsome testified that he knew the general character of the prisoner, and it was bad. W. H. Hauser testified that he had known the prisoner ten or twelve years, and that his general character was bad, but he had not heard it discussed for the past six months. Sheriff George W. Flynt testified: "I have known George Atwood about eight years and know his general character; it has been bad." All the above testimony as to character was after the prisoner had gone upon the stand as a witness in his own behalf.

The prisoner, among other testimony, in reply, offered in rebuttal to the testimony offered by the State as to the bad character of the defendant John F. Reynolds, who testified as follows: "I have known defendant for the last two or three years; have not heard anything against him. I never heard his character impeached, except for selling liquor. For truth and honesty I always considered it good"; and Sam Sides, who testified: "I know defendant's character for the last year or two, and have heard nothing against him for that time."

Prior to our statutes of 1866, ch. 43; 1868-'69, ch. 209, and 1881, ch. 110, now Rev., 1634 and 1635, which render the defendant in a criminal action competent, but not compellable, to testify in his own behalf, the State was not permitted to give evidence of the bad character of a defendant on trial for crime unless he himself first put his character in evidence. This was a protection to him, as his mouth was closed. Since the statute, if the defendant or prisoner elects to testify in his own behalf, he is before the jury, both as a witness and a defendant.

The prisoner strenuously insists, however, that it was only after he had testified in his own behalf, and the State had introduced evidence of his bad character, he put on proof of his good character, and that he offered this only to "rebut" the evidence of his bad character and not to put his character in issue. We know of no precedent and of no principle that entitled the prisoner, in putting on evidence of his good character, to have it restricted to his character as a witness, so as to avoid his character as a defendant being before the jury. The point attempted to be raised is too attenuated to be visible or practicable.

When the State offered evidence of the bad character of the prisoner, he did not ask that it should be restricted to his character as a witness. Rule 27 of this Court provides: "Nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks at the time of admission that its purpose shall be restricted."

Besides, before the adoption of this rule, which was designed to prevent such technical objections, the point had been decided in *S. v. Cloninger*, 149 N. C., 571, where the Court overruled an exception to the following charge: "Evidence as to the character of a witness who is likewise a defendant is competent for two purposes: (1) to enable the jury to place the proper estimate on the testimony of the defendant who is testifying as a witness; (2) as substantive evidence upon the question of guilt or innocence"; and said: "Where a defendant goes on the witness stand and testifies, he does not thereby put his character to an issue, but only puts his testimony to an issue, and the State may introduce evidence tending to show the bad character of the witness solely for the purpose of contradicting him. This is the rule laid down in *S. v. Traylor*, 121 N. C., 674, and *S. v. Foster*, 130 N. C., 676. But when a defendant introduces evidence himself to prove his good character, then that evidence is substantive and may be considered by the jury as such."

In this case, when the State put on evidence of the prisoner's bad character, he did not ask that it be restricted to his character as a witness, and when he offered evidence to "rebut," it was none the less evidence to his character, which, under the precedents, made it an issue in the trial, even under *S. v. Traylor, supra*.

But when the defendant goes upon the stand to prove his innocence, or rather to disprove the inference to be drawn from the evidence against him, it would seem that logically and necessarily he puts his character "in all capacities," whether as a witness or a defendant, in issue before the jury, and it becomes a fact or circumstance which they will necessarily consider in passing upon their verdict. The distinction sought to be drawn in *S. v. Traylor* would therefore seem to be an over-refinement in practice.

The Court properly instructed the jury that, where the killing is admitted or proven to have been done with a deadly weapon, the law presumes malice, and the burden is upon the prisoner to show matters in excuse or mitigation. *S. v. Burton*, 172 N. C., 940, a case which, according to the evidence of the prisoner, very much resembles the one at bar.

No error.