STATE v. FRANK BIRKMAN.

(Filed 2 April, 1930.)

**Homicide G d—Where accused is without means, his failure to provide proper burial is incompetent as evidence of his having killed his wife.**

In a prosecution of a husband for the murder of his wife evidence that he failed to provide or help purchase a coffin and clothes for the burial of the wife is incompetent as evidence of his guilt of her murder when it appears from uncontradicted evidence that the husband was out of a job and without means at the time, and an instruction to the jury that it might consider this circumstance in so far as it related to the defendant's attitude toward his wife and so far as the jury thought it threw light upon what the defendant did to his wife is reversible error, and the judgment of second degree murder will be set aside and a new trial ordered on appeal.

CRIMINAL ACTION, before *Johnson, Special Judge,* at August Term, 1929, of CUMBERLAND.

The defendant was indicted for killing his wife. The evidence tended to show that the defendant and the deceased were married on 4 August, 1929. The deceased died on the night of 12 August, 1929. The evidence tended to show that the deceased and her husband had had some dispute on the afternoon of August 12th, and that thereafter the deceased went to the room of Mrs. Sallie Andrews at the Palace Hotel in Fayetteville, arriving there about 8:30 o'clock. The defendant came to their room about 11:30 o'clock, and the deceased was lying on the bed. "She jumped up off the bed and started fighting Frank, scratching him in the face, and Frank hit her somewhere between her breast and her lower body (indicating between her middle breast line and her pelvis). . . . He struck her like that (indicating a punch with the fist straight out in front, on level about elbows). When he hit her she just crumpled down, her hands, head and all, just went down; she fell on the

18—198

floor, and Frank picked her up in his arms and threw her on the bed. . . . Frank pulled her up further on the bed and put pillows under her head. He said, 'Old lady, if you ain't dead, I will beat hell out of you tomorrow.' The deceased said nothing else and became quiet. Later on in the night, after applying ice to her head and portions of her body, a doctor was summoned who pronounced her dead."

There was evidence to the effect that the deceased had been drinking. The uncontradicted evidence was that the defendant had no job at the time of his wife's death. His relatives were also without financial means. A sister of deceased, over the objection of defendant, was permitted to testify as follows: "I asked him (defendant) about putting her in a casket, and he said he was not able and he could not get it, and I asked him if he could get his people to help out, and he said, 'No, they were not able.' I asked him about buying a pair of hose, and he said he did not have the money. Me and my father arranged for the funeral. The body was carried to McColl to an undertaker's office, and then we took her home. After the body got to McColl I did not see Birkman until the next morning. He was at Roy McLaurin's office, in McColl. Roy McLaurin is the mayor. Frank did not have much to say to me. He said we could go ahead and have the autopsy made, but that we would find out that she committed suicide. . . . I didn't go along with the body to South Carolina. It was not in a coffin. It was first taken to an undertaker's office and arrangements made to put it in a casket, and then it was carried to my house. When the body got there it had the same clothes on it. Other clothes were put on the body when we took her back to the undertaker's office."

The defendant was convicted of murder in the second degree and sentenced to a term of not less than four nor more than seven years in the State's prison.

From judgment pronounced the defendant appealed.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*Nimocks & Nimocks and Bullard & Stringfield for defendant.*

BROGDEN, J. In arraying the contentions of the State, the trial judge stated to the jury: "The State contends that his conduct afterwards, in failing to provide his wife a burial, according to the customs in civilized and enlightened communities, his failure and refusal to provide suitable clothing, and to assume a tender attitude toward her, is evidence from which you may infer, both, that he struck her, and that at the time he entertained towards her malice, at the time he struck her."

Thereafter, the trial judge instructed the jury: "The fact that a woman has died and has been sent to South Carolina, under circum-

stances that may not appeal to you as being proper, is no ground for convicting the defendant. That has no place in the trial. You can consider those circumstances in so far as they relate to the attitude of the defendant toward his wife, and in so far as you may think it throws light upon what he did to his wife, if anything."

The uncontradicted evidence was to the effect that the defendant at the time of the death of his wife was totally without financial means to purchase suitable clothing or provide a suitable and proper casket for his wife. His failure to provide a casket and suitable clothing was used by the State not only as evidence of malice, but also as evidence that he struck the blow which caused the death of the wife. The defendant denied that he struck his wife, and the evidence does not disclose that there was any evidence of a blow found upon her body after her death. The declarations, mental attitude or unnatural conduct of an accused may, in proper instances, be submitted to the consideration of a jury upon the question of guilt. *S. v. Brabham,* 108 N. C., 793, 13 S. E., 217; *S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625; *S. v. Lance,* 149 N. C., 551, 63 S. E., 198; *S. v. Plyler,* 153 N. C., 630, 69 S. E., 269; *S. v. Atwood,* 176 N. C., 704, 97 S. E., 12.

However, there seems to be no legal support for the theory that the financial inability of an accused to provide a proper burial is evidence of guilt. If any evidence had been offered tending to show that the defendant was financially able to provide a proper and decent burial for his wife, and neglected and refused to do so, such circumstance might be competent and admissible, at least, upon the question of malice; but no such a situation is disclosed in the present record, and the defendant's exception is sustained and a new trial awarded.

There are certain exceptions to the expert testimony relating to the force of the blow alleged to have been inflicted by the defendant. Portions of this testimony lie in the twilight zone of legal competency, but as a new trial must be had, we deem it unnecessary to discuss them.

New trial.