75 U.S. 27
 19 L.Ed. 346
 8 Wall. 27
 MILLS
v.
SMITH.
 December Term, 1868
 
 ERROR to the Circuit Court for the Northern District of Illinois: the case was this:
 In 1818, the United States issued to one Parmely, a soldier of the war of 1812, and then residing in Connecticut, a patent for a tract of land in Illinois. In 1837, he sold the land to Edwin Lacy, and receiving payment in full for it, executed and delivered to Lacy, at the time, a regular deed. This deed, however, was never recorded, and at Lacy's death, in 1848, his family had no information respecting the deed, or the location of the land. Lacy left one son and only heir named Andrew.
 On the 14th of August, 1854, a certain Benjamin Lombard, a dealer in military bounty lands, went to Parmely, in Connecticut, and having had some conversation with him as to whether any former deed had been made by him, obtained from him for the consideration of $19.56, a quit-claim deed to James Lombard. Benjamin Lombard took also from Parmely (indorsing it on the deed), an affidavit proving Parmely's identity with the original patentee, and stating 'that the deed which he has this day given for his bounty land is the only deed ever given by him for the said claim whatsoever.' This deed was recorded August 28, 1854.
 On the 14th of November, 1854, a brother of Lacy, the original purchaser, having heard of Lombard's visit to Parmely, and of his obtaining a quit-claim deed for the tract, which he had understood, years prior, had been sold to his deceased brother Edwin, applied to Parmely and obtained a deed conveying the land to Andrew Lacy, son and only heir of Edwin Lacy, deceased. This deed contained a recital and statement to the effect that the land had been sold to Edwin Lacy, in his lifetime, and about October 1st, 1850, and paid for; that no deed had been given, or, if there had been, that it was lost. This deed was recorded November 25, 1854.
 Andrew Lacy died soon afterwards, and by his will his title to the land went to one Mills.
 James Lombard sold his right in the tract, for which he had got the deed already mentioned from Parmely, to a certain Smith, on the 7th December, 1855; the deed not being recorded until October 12th, 1858.
 Mills now brought ejectment against Smith, and on the trial the original deed from Parmely to Edwin Lacy (the fact of having made which, or any like which Parmely by affidavit on the back of his deed to Lombard had denied), accidentally turned up.
 The question was whether, under the recording acts of Illinois, which enact that deeds shall take effect, as against creditors and subseq uent purchasers, from the time that they are filed of record, the title was to be regarded in Mills, or whether in Smith?
 The only important witnesses were Parmely himself and Benjamin Lombard, who had procured the deed for James Lombard. Both testified in regard to the facts of the case as already given; Parmely testifying that before he made the deed to James Lombard, Benjamin Lombard, a stranger to him, had hunted him out, and represented to him that there was no deed to Edwin Lacy on record; a representation which led him, Parmely, to believe that he might never have made a deed to Edwin Lacy, but only have handed over to him the patent issued by the government; that this Lombard stated to him that the town where the land lay wanted to get soldiers' rights, and would give $17 a deed, but no more; that the land had been sold for taxes, and that the right of redemption had expired, but that the town would give something. 'I told Mr. Lombard,' the witness continued, 'that I had disposed of the land to Edwin Lacy, who was then dead, and that I did not known that I could give anybody else a deed. Mr. Lombard said that he did not know whether I could or not. If I would only give him a deed he would give me the money.' The deed was then executed; Lombard, according to Parmely's testimony, himself drawing the affidavit, indorsed on it, and reading it to Parmely, who did not examine it to see if it was read correctly or not.
 Benjamin Lombard's testimony went to prove that Parmely had assured him repeatedly that he had never before made a deed to the land to any one; that although he had been negotiating a trade for it with Edwin Lacy, the trade had fallen through from Lacy's not doing as he agreed to do; that Andrew Lacy, the son and heir, had been to him to get a deed, which he, Parmely, refused to give him, for the same reason that he had not conveyed the land to Edwin Lacy, namely, that no consideration has been paid.
 The court below (Davis, J.) charged the jury in substance as follows: refusing to give instructions in pursuance of specific requests; considering that these did but request in a specific form, instruction which in substance had been already given in a general one.
 GENTLEMEN OF THE JURY: It is not controverted, on the part of the defendant, that the title as shown in the plaintiff would be a good, legal, subsisting title, independent of the recording laws.
 Now as respects the defendant's title. The deed of 1837, from Parmely to Lacy, not being recorded at the time the deed was made by Parmely to Lombard, the first question to be determined is, was Lombard a bon a fide purchaser within the meaning of the recording laws? Those laws provide that every deed shall take effect from the time it is filed for record, as against creditors and subsequent purchasers without notice. This deed, not having been recorded, from Parmely to Edwin Lacy, in August, 1854, the first question for you to determine is, was Lombard a purchaser without notice of the previous conveyance made to Edwin Lacy, and had he paid value for the land? The evidence upon that point consists of the testimony of Parmely and Benjamin Lombard. Of course, Benjamin Lombard being the agent of James Lombard in his purchase, notice to Benjamin is notice to James.
 It is necessary that James Lombard, or Benjamin Lombard, should have had notice of the previous conveyance to Edwin Lacy, or of some fact sufficient of put a prudent man upon inquiry. In other words, there must have been good faith on his part when he made the purchase.
 And the question for you to determine upon all the testimony is, whether there was any knowledge brought home to Benjamin Lombard that there had been a transfer, legal or equitable, made of this land to Edwin Lacy? If that fact was brought home to him, or if any fact that would warrant a prudent man in coming to the conclusion that there was a valid transfer, then he could not be said to be a purchaser in good faith; and of course the registry laws did not protect him in the purchase. If he was a purchaser in good faith, then it makes no difference whether Smith was or was not, because his purchase protects Smith—he having purchased from him; but if he was not a purchaser in good faith, the next question is, did Smith purchase in good faith? The same rule is applicable substantially to him as to Benjamin Lombard, the agent of James Lombard. It is necessary that he should have purchased the land and paid the money for it without knowledge of this previous deed. If he knew of the existence of this previous deed to Edwin Lacy, or had knowledge of any fact which would satisfy a prudent man, so as to put him upon inquiry that there was a valid sale made to Edwin Lacy before he paid the purchase-money, then he could not be considered a purchaser in good faith.
 But it is contended, on the part of the plaintiffs, that inasmuch as there was a deed from Parmely to Andrew Lacy on record on the 25th of November, 1854, and as that recited that he had made a conveyance or transfer of the land to Edward Lacy many years before, that was constructive notice to the defendant of the conveyance. I am hardly prepared to admit that as a rule of law. If he had read this deed or the record of it, or saw it; if, in other words, he had actual notice, then, as a matter of course, he would be bound by it, so far as such recital could bind him; but I hardly think that the fact it was simply on record would be constructive notice to him, so as to prevent him from being a bon a fide purchaser.
 Parmely, when the recital was made, had no title to the land, according to the record, because the deed to James Lombard was recorded the 28th of August, 1854, before this deed was made to Andrew Lacy, and it would be a hard rule, it seems to me, to hold that the recital in a deed attempting to convey land which the man had no right to convey, would operate as constructive notice to a third party. Therefore, the court instructs you that it was necessary that Smith should have had actual notice of this previous deed, or of some fact which would satisfy a prudent man that there had been a transfer of the land, before he paid the purchase-money. If he had, then he would not be a purchaser protected by the registry laws; if he had not this notice, then he would be protected, whether Lombard was a bon a fide purchaser or not, because the rule you will understand to be this, as counsel on both sides admit, that the defendant can protect himself by showing that Lombard is a bon a fide purchaser without notice, or that he himself is a bon a fide purchaser without notice.
 Gentlemen, you will see that the question turns entirely on the view you take, from the evidence, upon the fact whether these two persons are purchasers in good faith, without notice; that is, Benjamin Lombard and the defendant. If either of them is a purchaser in good faith, then the defendant is protected. You must find that they both had knowledge, before you can find a verdict for the plaintiff. If they both had knowledge of this pre-existing title, then, as a matter of course, the plaintiff's title stands good, otherwise not.
 VERDICT AND JUDGMENT ACCORDINGLY.
 Mr. E. S. Smith, for the plaintiff in error, contended that the testimony of Lombard was incredible, and was in fact denied by Parmely; that Lombard was not a purchaser for value, but a prowling hunter of old soldiers' rights; that the court ought to have charged specifically that a deed obtained upon such false representation was absolutely void, and that notice of a sale was sufficient, independently of notice of a deed; that the charge as to the effect of the recital did not come up to the testimony, for that it was plain that Lombard had been looking through the records, and had seen the recital on them of a former deed.
 Mr. H. M. Wead, contra, argued that no one could read the evidence and fail to arrive at the conclusion that neither had notice of the prior conveyance to Andrew Lacy, because the existence of that conveyance was not known until after the commencement of this suit; that if either Lombard or Smith were innocent purchasers, then Smith was to be protected; that it was well settled, both in England and in this country, that if a person purchased for a valuable consideration with notice, he might shelter himself under the first purchaser.*
 Mr. Justice GRIER delivered the opinion of the court.
 
 
 1
 The counsel, in their arguments in this case, seem to have forgotten that this court have no right to order a new trial because they may believe that the jury may have erred in their verdict on the facts. If the court below have given proper instructions on the questions of law, and submitted the facts to the jury, there is no further remedy in this court for any supposed mistake of the jury.
 
 
 2
 On examining the charge of the court below, we find a clear exposition of the legal questions arising in the case.
 
 
 3
 The jury were properly instructed that the deed of Parmely, the patentee, to Edwin Lacy, in 1837, would confer a good legal title on the plaintiff independently of the recording laws. But as this deed was not recorded, the question to be determined was, whether the defendant, who claimed title under the same patentee, through a deed dated 14th of August, 1855, and recorded, was a bon a fide purchaser without notice, and had paid value for the land. It was contended that a recital in a deed from Parmely to one Andrew Lacy, after the deed to James Lombard was recorded, and under which the defendant claims, would operate as constructive notice to a third party. But the court instructed the jury that it was necessary that the purchaser should have actual notice of the previous deed, or of some fact which would satisfy a prudent man that there had been a transfer of the land. In conclusion, after various propositions for specific instructions, amounting substantially to the instructions already given, the court summed up by telling the jury, that they would see that the question turned entirely on the view which they might take from the evidence, upon the fact whether Benjamin Lombard, Jr., and the defendant were purchasers in good faith, without notice. 'If either of them is a purchaser in good faith,' said the court, 'then the defendant is protected. You must find that they both had knowledge before you can find a verdict for the plaintiff. If they both had knowledge of this pre-existing title, then, as a matter of course, the plaintiff's title stands good, otherwise not.'
 
 
 4
 We see no error in these instructions.
 
 
 5
 After having thus correctly submitted the case to the consideration of the jury, the court were not bound to answer a catechism of questions which could only confuse their minds and lead to erroneous conclusions.
 
 
 6
 JUDGMENT AFFIRMED.
 
 
 
 *
 Leading Cases in Equity, by Hare and Wallace, pages 50 and 99, and cases there cited.