# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## HARMAN v. CUNDIFF.

### JULY 8th, 1886.

1. SLANDER—*Declaration—Actionable words.*—Merely opprobrious epithets, as rascal, cheat, villain, without a colloquium, are not actionable. But to call a man a thief, to say of him he stole my sheep, or that he stole sheep, are words which impute a punishable offence, and are actionable, and a declaration charging that defendant used those words of plaintiff is good.
2. PRACTICE AT COMMON LAW—*Variance—Amendment.*—Where declaration charges that the slanderous words were uttered in the presence of three named persons, and proof is that one of the three was not present, declaration may be amended at the trial, as the variance is immaterial. Code 1873, ch. 173, sec. 7.
3. IDEM—*Evidence in mitigation.*—At trial of action for slander defendant cannot introduce evidence of a fight which had occurred previous to the uttering of the slander, and to which plaintiff's attorney had alluded in stating the case to the jury, the fight having no connection with the slander.
4. IDEM—*Exemplary damages—Wealth of defendant—Instructions.*— It is not improper to instruct the jury that if, from the evidence, they believe defendant uttered the slander from actual malice, they may find exemplary damages, and that in estimating the damages they shall consider the standing of the parties, and the wealth of defendant is only to be considered so far as it tends to show his rank and influence in society.
5. IDEM—*Instructions.*—When instructions given cover the entire case, and properly submit it to the jury, it is not error to refuse to give others, even though in point of law they are correct. *C. L. Asylum* v. *Flanagan*, 80 Va. 110.

Error to judgment of circuit court of Floyd county, rendered 9th May, 1885, in an action of trespass on the case in slander,

wherein John Cundiff was plaintiff and David Harman was defendant. The jury found for the plaintiff, and assessed his damages at $800, and. the court entered up judgment accordingly. At the trial five bills of exceptions were taken by defendant to the rulings of the court, and a writ of error and *supersedeas* obtained to said judgment from one of the judges of this court.

Opinion states the case.

*G. W.* and *L. C. Hansbrough*, for the plaintiff in error.

(1.) Words are actionable which impute a punishable offence. The fourth count of the plaintiff's declarance says: "Cundiff stole Peter Harman's sheep" and imputes a punishable offence and is actionable. 4th Minor, 378. None of the other counts contained words imputing a punishable offence. Words not imputing a punishable offence may be made to sustain an action by the use of an averment containing a plain allusion to some prior transaction, where from the words the hearers must necessarily have understood the slanderer to impute to the plaintiff the guilt of some punishable offence, which averment is called a "colloquium." Hence it is not actionable to call one "villain," "cheat,"."swindler," or "rogue," or "thief," or to say he is "forsworn," and the like, without a colloquium of some proceeding in a court of justice in which the party had been examined on oath, or of some transaction to which the opprobrious epithets were designed to relate. 4th Minor, 379. With such colloquium, such words, not actionable in themselves, may be actionable. *Idem*—Folkard's Starkie on Slander, p. 468, note (24.) None of the counts had a colloquium. In the cases wherein "thief" has been held to be actionable, there was such statement or colloquium. "Cundiff stole sheep," does not impute a punishable offence, and is not

actionable *per se.* Yet with proper averments, or colloquium, it may be actionable. No colloquium in case at bar. Hence, all the counts but the fourth were insufficient in law, and the demurrer should have been sustained. Thus *"where B. had been accused of stealing a tray of biscuits,* and A. said, in the hearing of B. and other persons, that, if they did not look out A. would make the tray of biscuits roar," it was held that *with proper averments,* connecting B. with this language of A., B. might maintain action against A. And so, of the words: "Your children are thieves." Townshend on Slander, p. 164, note. To call one "a thief" is not actionable, unless it is intended to impute to him a felony and such intention must be shown by proper averments called the colloquium.

(2.) *Variances.*—Material. *Allegata* and *probata* must correspond. The following variances were held to be material: *Allegation.* "There was a collusion between A., B., &c." *Proof.* There was a collusion between A. and B. *Allegation.* "You stole a dollar from A." *Proof.* "You stole a dollar from B." See also illustrations from *Waggoman* v. *Byers,* 17 Maryland. In *Hansbrough* v. *Stinnett,* 25 Gratt. 504, the allegation was: Defendant said, "Dick Stinnett killed my beef." *Proof was:* Defendant said, "she suspicioned that Dick Stinnett helped to kill her beef or had a hand in it." *Held:* It was a material variance. Court below allowed plaintiff to amend his declaration during the trial. *Held:* Such leave to amend was error.

Bond described as dated 4th January, 1874. True date was 4th January, 1875. *Held:* Fatal variance. *Gordon* v. *Brown,* 3 H. and M., 219.

Lien for 12 months was described as lien for five months. *Held:* Variance fatal. *Olinger* v. *McChesney,* 7 Leigh, 660.

Indictment for cutting ten white oaks. *Proof.* Cutting *one* black oak. *Held:* Variance fatal. *Butcher's Case,* 4 Gratt., 544.

*In case at bar.* Declaration alleged that the defendant said

in the presence of Riley Hylton that "plaintiff stole Peter Harman's sheep." *Proof.* Defendant so said, but Riley Hylton was not present. Court below allowed plaintiff to amend by striking out the name of Riley Hylton from the declaration. Defendant excepted. The variance was material. Code 1873, chapter 173, section 7, allows amendment to cure immaterial variances, but not for *material* ones. This variance was material. When defendant approached Riley Hylton to know how it was, &c., Riley Hylton would deny being present and hearing any such remark, and such denial would mislead and injure the defendant in making his defence. If the amendment were allowed, the court below should have sent the case to rules. 1 Rob. Pr., 233.

(3.) *Instructions.*—It was error for the court to instruct the jury as to actual malice as the ground of exemplary damages, without informing the jury that they had a right to look to all the circumstances of provocation and excuse given in evidence in mitigation of damages. It is error for a court to give prominence to the evidence of one party to the slight of the evidence of the other, party; for example, the malice and wealth of the defendant. See *Brown* v. *Rice,* 76 Va. 629. It was error to refuse to give instruction 6: "The jury are instructed that if, from the evidence, they believe plaintiff entitled to recover, the amount of damages is to be regulated by the injury done to the plaintiff, and not by what defendant is able to pay." See Burks, J., on p. 201, 29 Gratt., *Womack* v. *Circle.* It was also error to refuse the other instructions as asked for by defendant. They clearly state the law appropriate to the case. As given, some of them seem insensible and misleading.

*A. A. Phlegar,* for the defendant in error.

LACY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Floyd county, rendered on the 9th day of May, 1885. It is an action of trespass on the case in slander. The alleged slanderous words spoken by the plaintiff in error, and published of and concerning the defendant in error, were variously stated by the plaintiff in his declaration in the several counts as—1st. "John Cundiff is a good hand to steal sheep;" 2d. "John Cundiff is as good a hand to steal sheep as ever I saw;" 3d. "John Cundiff is the best hand to steal sheep I ever saw;" 4th. "John Cundiff is a good hand to steal sheep; he has stolen Peter Harman's sheep;" 5th. "John Cundiff has stolen sheep;" 6th. "John Cundiff stole sheep;" 7th. "Cundiff has stolen sheep;" 8th. "John Cundiff has stolen sheep;" 9th. "He has stolen sheep;" 10th. "He stole sheep," with a varied colloquium in each case.

The defendant demurred to the declaration, and the demurrer was overruled. Upon the trial, instructions were asked for by the defendant, and refused by the court. The jury found for the plaintiff, and assessed his damages at eight hundred dollars. The defendant moved the court to set aside the verdict of the jury and grant him a new trial which, being overruled, the defendant moved in arrest of judgment, which motion the court overruled, and gave judgment against the defendant in accordance with the verdict. Whereupon the defendant, having at the trial excepted to the rulings of the court against him, tendered five bills of exception, which, together with the facts proved, were duly certified, applied for and obtained a writ of error to this court.

The first error assigned here is as to the action of the court in overruling the demurrer to the declaration, alleging that the words charged in the first, second, third, fifth, sixth, seventh, eighth, ninth, and tenth counts, stated above, by corresponding numbers, are not actionable, and impute no

punishable offence, and that the words charged in the fourth count being actionable, the demurrer should have been sustained to all the counts of the declaration, except the fourth count, and the plaintiff left to stand on the fourth count alone, the words in the other counts not being actionable in themselves, and no special damage being alleged.

Slanderous words are actionable *per se*, when they impute an indictable offence ; and an action of trespass on the case may be had without averring or proving any particular damage to have happened, but merely upon the probability that it might happen. The accusation must be precise in its terms, or have such a plain allusion to some prior transaction that the hearers of the words must necessarily have understood that the slanderer meant to impute to the plaintiff the guilt of some punishable offence; for an innuendo or construction cannot be given to words, which these words do not necessarily import, either of themselves, independently of any other circumstances, or with necessary reference to some other circumstances occurring at the time of the accusation.

Words falsely spoken of a person, which impute to a party the commission of some criminal offence involving moral turpitude, for which the party, if the charge is true, may be indicted and punished, are such as will support an action. Merely opprobious epithets, as rascal, cheat, villain, &c., without a colloquium, are not so. But to call one a thief, to say of him, he stole my sheep, or he stole sheep, are words which impute a punishable offence, and are actionable. 4 Min. ·379; 3 Bl. Com., 153; Starkie on Slander, 98; Wait's Act & Def., 727, 5 Vol.

We think the demurrer was properly overruled in this case as to all the counts in the declaration. But as to the fourth count, it is admitted that the demurrer was properly overruled, it being there charged against the plaintiff that he, "John Cun-

diff, is a good hand to steal sheep; he stole Peter Harman's sheep."

But, it is assigned as error that the allegation there being that the charge of stealing sheep was made in the presence of three named persons and divers other good citizens, &c., and it appearing from the evidence that only two of the named persons were present together with divers others good citizens, upon the trial, after the evidence was in, the court allowed an amendment to the declaration, striking out the name of the person who was not present. The statute provides for this proceeding, *unless the amendment is material.* Code, chapter 173, section 7.

If two named persons who were present, and divers other good citizens, &c., heard the slanderous words, the fact that one more was not present, and so did not hear them, is immaterial certainly, and the circuit court did not err in allowing the amendment at the trial.

The case of *Hansbrough* v. *Stinnett*, 25 Gratt. 495, is not an authority to the contrary. In that case this court held the amendment to be material, the actionable words being inserted by the addition of a new count.

The second assignment of error is as to the admission of proof of slanderous words uttered and published before and after the words complained of in the declaration. This is admissible upon the question of damages. *Hansbrough* v. *Stinnett, supra,* after the words laid have been proved.

The third assignment, as to the absence of Riley Hylton, has been already disposed of in passing upon the fourth assignment, which is as to the amendment of the fourth count.

The fifth assignment is that the court overruled the motion of the defendant to introduce evidence of a fight had between the plaintiff and defendant some time before the uttering of the slanderous words, upon the ground that the plaintiff's

counsel had referred to this fight in his opening statement to the jury. This fight had no connection whatever with the utterance of the slanderous words, and evidence concerning it could be admitted upon no legal ground.

The sixth assignment is as to the instruction given by the court to the jury as follows: "The jury are instructed that if they believe from the evidence that the defendant, within twelve months before October, 1884, spoke of and about the plaintiff the defamatory words charged in either count of the declaration, and that he was actuated by actual malice towards the plaintiff, they may give exemplary damages, and in ascertaining the damages they shall consider the plaintiff's standing and that of the defendant, and the wealth of the defendant is only to be considered so far as it tends to show the defendant's rank and influence in society, but not as showing his ability to pay."

This instruction correctly expounded the law, and there was no error in giving it to the jury. *Womack* v. *Circle*, 29 Gratt. 210; Wait's Act. & Def. 5, p. 753.

The seventh assignment is as to the action of the court in refusing to give the instruction asked for by the defendant *as asked*, and amending the first and third, and rejecting the fifth and sixth. The question arising as to the amendment of the first instruction has been considered along with the demurrer. The amendment to the third instruction was proper, as it was otherwise inapplicable to the case. The fifth and sixth instructions were properly refused, having been already given as to the sixth instruction, and properly modified as to the fifth.

It is well settled, says Lewis, P., in *Central Lunatic Asylum* v. *Flanagan*, 80 Va. 110, that when instructions are given which cover the entire case, and which properly submit the case to the jury, it is not error to refuse to give others, even though in point of law they are correct. Citing *Laber* v. *Cooper*, 7 Wall.

565. It is safest, however, for the court to give instructions asked for when they correctly expound the law, and are relevant to any evidence in the case. Citing *Hopkins* v. *Richardson*, 9 Gratt.; 4 Min. Inst. p. 747. See also *R. R. Co.* v. *Horst*, 93 U. S. 291; *Mills* v. *Smith*, 8 Wall. 27; *Cornett* v. *Rheedy*, 80 Va. 710, and cases cited; 1 Rob. Pr. 338; *McDowell* v. *Crawford*, 11 Gratt. 377; Barton's L. Pr. 214, and cases there cited.

The ninth assignment is as to the refusal of the court to set aside the verdict as contrary to the law and the evidence, and in arrest of judgment for errors on the face of the record.

In this case, there can be no doubt that the case was proved. At a wheat-threshing in the presence of many persons, who have testified in this case, the defendant, Harman, had said that a certain person, by him named, was the best hand to feed a threshing-machine he had ever seen. A by-stander remarked that John Cundiff (the plaintiff) was the best feeder he had ever seen. Whereupon Harman, being at enmity with John Cundiff, seemed to lose his temper, and said he (John Cundiff) is the best hand to steal sheep I ever saw—he stole Peter Harman's sheep. This was proved beyond question; and it further appeared that John Cundiff had driven off a flock of sheep to market, and some of Peter Harman's sheep having become entangled in the drove, have been driven off and sold, two in number, and that John Cundiff had reported the matter to the owner, Peter Harman, and had settled the matter with him upon an agreed basis.

The words were most grievous to a man of good character, if the jury should so find the plaintiff to be. The damages hotly demanded, under the circumstances, were $5,000. The jury seems to have calmly viewed the situation, without any manifestation of passion or prejudice. The judge opened the door to them, to award examplary damages; they did not give $5,000, but $800. They were neighbors and acquaintances of both

parties, perhaps; they do not appear to have mingled in the quarrel, but to have held the matter well in judgment. Their verdict seems to be reasonable and just. We cannot disturb it.

All men have an instinct or sentiment repugnant to this sort of action, and in this feeling judges once shared, and the judgments of the court were shaped accordingly. And in order to discourage actions of slander, the maxim that words should be taken in *mitiori sensu* found favor with the courts.

That doctrine, however, we are told, was found to increase the tendency to malicious defamation, and the courts have long since resorted in such cases to the more reasonable doctrine, that words should be taken in the sense in which they were reasonably understood by the by-standers.

We will conclude this discussion by calling to our support the wise words of a great judge of this court, delivered from this bench nearly one hundred years ago. He said: "The law has liberally provided remedies for every person injured in his person, property, or reputation."

The plaintiff in this case complains of a wrong done to his character. The jury thinks his complaint well founded, and that he has sustained damage thereby to a certain amount. Yet this court is applied to, to set aside the verdict by declaring the words charged in the declaration are not actionable.

If a man be injured in his property to the value of five shillings, he may recover reparation therefor; and yet, if the injury, though an hundred times more grievous, be offered to his reputation, it is said he is without redress by the principles of law, though the fact be established by a jury.

If the books be consulted it will be found that in ancient times the judges, to discourage actions of slander, were very rigid indeed in their decisions, from whence arose the doctrine, long since exploded, that words should be taken in *mitiori*

*sensu.* Discovering afterward that slanders were by this means encouraged, a more rational and just principle was introduced. *"That words should be understood in the sense they were understood by the by-standers."* In the case of *How* v. *Prinne,* 2 Lord Raymond, 812, it was decided that to charge a man with evil principles was actionable.

In this case, the words laid in the declaration clearly import a charge against the defendant in his mercantile character. The declaration states him to be a merchant, and the whole of it, taken together, shows that the words were spoken of him *as such.* It was contended that the words in themselves do not import a charge against his reputation. We admit that they might have been innocent. One man may properly say to another in private, by way of asking for information, or in the necessary discussion of a disputed point, that that other had not accounted for property placed in his hands. The case is quite different here; the charge is publicly made; it is laid to have been maliciously spoken, with intent to injure the plaintiff; and so the jury have found it. After this it would be highly improper in the court to set aside the verdict. *Hoyce* v. *Young,* 1 Wash. 190. See, also, *Hyers* v. *Wood,* 2 Call, 574, 588; *Cane* v. *Sheler,* 2 Munf. 143–144; *Hyers* v. *Shole,* 2 Munf. 200; *Harrison* v. *Brock,* 1 Mun. 22.

We think the verdict of the jury in this case was plainly right, and that the circuit court of Floyd did not err in overruling the motion to set aside the same, and in rendering judgment thereon; and the said judgment is affirmed.

JUDGMENT AFFIRMED.