The prisoner was indicted for the murder of William Wentz, and convicted of murder in the second degree. When the case was called in this Court, counsel of the prisoner very frankly withdrew all assignments of error, as untenable, except three, which were reserved, as follows:
"1. The first of these is, that the court charged the jury as follows: `The prisoner has testified in his own behalf. You are to scrutinize his evidence — that is, examine it closely and carefully to ascertain whether you shall believe it. The same applies to the testimony of any of his near relations. The same principle applies to the testimony of the wifeof the deceased and her mother. You are to scrutinize the testimony of all
of these witnesses; but after doing so, if you find the testimony of either
of the witnesses worthy of belief, it is then entitled to the same weight as if the particular witness had no interest in the result of your verdict.'
"2. The second is, that the court instructed the jury that the testimony as to the character of the prisoner, who took the stand as a witness and testified in his own behalf, was competent in two aspects — first, as affecting his credibility, and, second, as substantive testimony upon the question of his guilt or innocence. There was testimony offered by himself of his good character, and also testimony of his bad character.
"3. The third is, that the court instructed the jury as follows: `Or, if *Page 747 
you find from the evidence that there was a difficulty between them and that the prisoner entered into the fight willingly.'"
There was a verdict of guilty of murder in the second degree, and from the sentence of the court the prisoner appealed.
After stating the case: We must commend the learned counsel who defended the prisoner for their very praiseworthy attitude in the discussion of this case. There were numerous exceptions, but from these were culled such as were of apparent merit, and others having no substantial foundation were discarded, and the argument was properly based upon the really material questions and thus stripped of all redundant matter. All exceptions taken during the hurry of a trial, when no sufficient opportunity is given for adequate reflection, should be afterwards weighed carefully, and those found to be wanting in merit should be omitted from the assignments of error. It is always best for both parties, and especially for the appellant, that this should be done, as greater prominence is given to those matters which call for deliberation, and the case is presented in concise and compact form. It saves time, which should not be wasted, and prevents confusion. The one who does this will surely gain by it in the better consideration of his case.
The first exception cannot be sustained, as the prisoner was as much a witness when he testified in his own behalf as any of the other persons who testified for one side or the other, and the context clearly shows that he was to be embraced in the descriptive word, "witness." The judge stated the rule as to the prisoner, and then said the same rule applies to near relatives and to the wife and mother of the prisoner. You must apply the rule "to all these witnesses," clearly meaning the prisoner, who was a witness, as well as the others designated. When the judge told the jury that they must scrutinize the testimony of all these witnesses, and if they found the testimony of "either" of them worthy of belief, it would then be entitled to the same weight as if the particular witness had no interest in the result, he plainly referred to each and every witness who had testified, the word "either" being used in the sense of "any." The lexicographers say that while the word "either," according to its strictly accurate meaning, relates to two units or particulars only, it often, in actual use, refers to some one of many. (Century Dictionary.) It was said in Misser v. Jones,34 Atl. (Me.), at 179, that "either of the foregoing cases" should be held to include "each and *Page 748 
every case previously mentioned." Webster's Dictionary says that the word "either" is properly used for two things, but sometimes of a larger number, for "any one." "Scarce a palm of ground could be gotten by either of those," were the words of Bacon. And Dr. Holmes said that "There have been three famous talkers in Great Britain, either of whom would illustrate what I have to say about dogmatists." These are high authorities and worthy of confidence in their accuracy. We may safely venture to use a word in the sense approved by these erudite scholars. It may be added that while the skilled philologist or the purest in letters may criticise the use of the word in the connection where it was placed, it is quite probable that the plain men of the jury understood its intended and real meaning the better for its use. The other part of this instruction, as to the proper method of weighing and estimating the testimony, was correct, according to our precedents. S. v. Vann, 162 N.C. at 541; Ferebee v. R. R., 167 N.C. 295-296.
The second assignment of error also is untenable. When the prisoner elected to become a witness for himself, he was subject to cross-examination and impeachment and to the other disadvantages of being a witness, and his credibility became involved; and when he offered evidence of his good character, and the State of his bad character, this put his general character in evidence substantively, and the jury were not confined to a consideration of it only as affecting his credibility. We have just recently decided the very question in S. v. Atwood, at this term (176 N.C. 704), where the Chief Justice said: "Prior to our statutes of 1866, ch. 43; 1868-'69, ch. 209, and 1881, ch. 110, now Rev., 1634 and 1635, which render the defendant in a criminal action competent, but not compelable, to testify in his own behalf, the State was not permitted to give evidence of the bad character of a defendant on trial for crime, unless he himself first put his character in evidence. This was a protection to him, as his mouth was closed. Since the statute, if the defendant or prisoner elects to testify in his own behalf, he is before the jury, both as a witness and a defendant. The prisoner strenuously insists, however, that it was only after he had testified in his own behalf, and the State had introduced evidence of his bad character, he put on proof of his good character, and that he offered this only to `rebut' the evidence of his bad character and not to put his character in issue. We know of no precedent and of no principle that entitled the prisoner in putting on evidence of his good character to have it restricted to his character as a witness, so as to avoid his character as a defendant being before the jury. The point attempted to be raised is too attenuated to be visible or practicable." In S. v. Cloninger, 149 N.C. 567, at p. 571, this Court sustained the following instruction: "Evidence as to the character of a witness, who is likewise a defendant, is competent for two *Page 749 
purposes: (1) to enable the jury to place a proper estimate on the testimony of the defendant who is testifying as a witness; (2) as substantive evidence upon the question of guilt or innocence." And added: "Where a defendant goes on the witness stand and testifies, he does not thereby put his character in issue, but only puts his testimony in issue, and the State may introduce evidence tending to show the bad character of the witness solely for the purpose of contradicting him. . . . But where a defendant introduces evidence himself to prove his good character, then that evidence is substantive evidence and may be considered by the jury as such."
The third assignment of error is based upon an exception to the charge: "Or, if you find from the evidence that there was a difficulty between them, and that the prisoner entered into the fight willingly." This excludes the plea of self-defense.
The exception does not embrace all of the instructions upon the law as to murder and manslaughter, and it is a well established rule of all courts that the charge must be construed as a whole in order to have a clear understanding as to the meaning and significance of its various parts.Kornegay v. R. R., 154 N.C. 389; Leggett v. R. R., 173 N.C. 698, andBrown v. Mfg. Co., 175 N.C. 201, at p. 204, where we used language peculiarly applicable to this exception, as follows: "If this was all that had been said by the learned judge, there might be some ground for criticism, but it was not, and this shows the necessity for examining the charge, not disconnectedly, but as a whole , or at least the whole of what was said regarding any special phase of the case or the law."
Before giving the instruction, to which this exception is taken, the court very fully and clearly charged the jury as to murder, manslaughter, and self-defense, and especially with strict reference to the different aspects of the evidence in the case, and its application to the several views presented, and this takes it out of the principle as laid down in S.v. Baldwin,155 N.C. 494, and S. v. Pollard, 168 N.C. 116. The court had correctly charged, and in a very careful and particular way, as to the different degrees of murder, as to manslaughter, and as to self-defense, and when the instruction complained of is read with proper reference to what precedes it, and in view of its visible connection and close alliance therewith, the jury could but have inferred that when the judge used the words, "difficulty" and "fight," he referred to an affray between the parties, in which they had mutually and willingly but unlawfully engaged, and also that if in the difficulty the prisoner acted in self-defense he could not be convicted of any crime, and should therefore be acquitted. Any other construction of the charge would make it contradictory, whereas if the supposed objectionable phase is read with the *Page 750 
context where it appears, and the proper meaning given to each of its parts, the charge becomes consistent and harmonious. The jury could not, under a charge, which fully explained how the evidence should be applied to the various phases of the case, conclude that if the prisoner entered the fight in self-defense he could be convicted, although he did so willingly, the only possible and legitimate construction being that if he acted simply in self-defense he should be acquitted, but if he engaged in an affray with the deceased — that is, in unlawful combat — and did so willingly, he could not set up in his exoneration that he acted in self-defense.
The case of S. v. Clingman Harrell, 107 N.C. 944, sustains the charge, and decided a question which is much like the one we have before us. It was held that if there was a fight into which the parties entered willingly, they were guilty of an affray, and it could make no difference that after it started with his consent, and during the further course of the combat, the defendant continued to fight because he apprehended that his adversary had formed the purpose of making a violent assault upon him, and that he shot at deceased under this apprehension. The court, in that case, had instructed clearly as to self-defense, and the jury was fully informed, by construing the charge as a whole, that by a willingness to fight was meant that there must be no ground of self-defense, but simply an affray, without any such element, or where the parties fought willingly and without any legal excuse.
While this is true, we deem it proper to say that instructions should be free from any obscurity in the respect pointed out, so that the jury may not infer that if there is any legal excuse for the act of the prisoner he would be guilty simply because he may have fought willingly. If we were of the opinion that there was any peg in this case upon which to hang a fair doubt as to the meaning of the charge, we would order a new trial, but when we read all of the charge we do not think there is.
Immediately after giving the instruction to which this exception was taken, and in direct connection therewith, the court charged the jury emphatically as to self-defense, and immediately before it enumerated all acts which upon the evidence could fix guilt upon the prisoner, except a simple affray, showing clearly that by these words he was describing an affray in its technical sense.
A case resembling this one in its facts is S. v. Crisp, 170 N.C. at p. 791, where it is said: "In the present case his Honor in effect charged the jury that if the testimony of defendant was believed, they would acquit him. The jury, therefore, having received and acted on the State's evidence as presenting the true version of the occurrence, therefore, in the light of this testimony and the principles of law heretofore stated, his Honor was clearly justified in charging the jury, as he did, *Page 751 
that if the defendant entered into the fight willingly or used language calculated and intended to bring it on, he could not maintain perfect self-defense, unless he satisfied the jury that he had quitted the combat, etc., the State's evidence tending to show that the defendant, with his pistol continuously in evidence, had used language towards deceased that under the circumstances was well calculated to provoke a breach of the peace; and, further, that at the commencement of the difficulty he had made a hostile and threatening demonstration with the weapon."
We find no error in the trial or the record.
No error.