STATE v. JAMES COBLE.

(Filed 21 May, 1919.)

1. **Appeal and Error—Objections and Exceptions—Brief—Rules of Court.**
   Exceptions not set out in appellant's brief are deemed to have been abandoned on appeal. Rule 34.

2. **Homicide— Manslaughter— Instructions—Firearms—Recklessness—Self-Defense—Instructions.**
   Where a third person is killed while endeavoring to prevent a homicide which appeared imminent, and there is evidence that the combat was sudden, but the prisoner willingly entered into it and pointed a gun at his opponent while the latter was assaulting him with his hands, and that the gun fired while the deceased, having caught the gun barrel, was jerking it to prevent the homicide: *Held,* an instruction is proper under Revisal, sec. 3632, and the common law, from the wanton and reckless pointing and use of the gun by the prisoner; that if the prisoner willfully entered into and pursued the combat, resulting in the heat of passion in the death of the deceased, he would be guilty of manslaughter, and that to sustain a plea of self-defense it must be shown that the defendant was without fault in bringing on or provoking the difficulty, or that he had abandoned it after it was started, or that having retreated as far as he could have

done with safety he used the force that was apparently necessary under the circumstances.

ALLEN, J., dissenting.

APPEAL by defendant from *Lane, J.,* at January Criminal Term, 1919, of GUILFORD.

The defendant was indicted for murder in the first degree. At the beginning of the trial the solicitor stated in open court that he would ask a conviction only for murder in the second degree or of manslaughter.

The evidence is stated in the case settled upon agreement as follows: "James Greeson, on Christmas Day 1918, was running a small illicit still near his house in Guilford County. On the morning of that day Elwood Brothers and James Coble, the defendant, were present, looking on. They were taking no part whatever in the operation of the still. James Coble had with him, as usual, his old double-barreled gun. About 11 o'clock that day W. L. May, Henry Amick, the deceased, and Monroe Coble came to the said still. Some conversation took place between Henry Amick and James Coble. Henry Amick was joking and teasing James Coble about having gotten tight and hollering and shooting off his gun on former occasions. After a short time May, Monroe Coble, and Henry Amick left. About 5 o'clock that afternoon James Coble was at the house of James Greeson, when May, Monroe Coble, and Henry Amick again came to that place. James Coble had his gun. It was proven that it was his habit to carry his gun wherever he went, and there is no evidence that he had it along with him for any purpose of making trouble or using the same in a fight. Henry Amick also had a gun. Monroe Coble began to quarrel with James Coble, and invited him down into the woods to fight. James Coble refused to go. After some further words between Monroe Coble and James Coble, Monroe Coble cursed James Coble and said that he was going to 'bat his eyes out.' James Coble stepped back, the parties being ten or fifteen paces apart, and said, 'No you won't;' and the witness Elwood Brothers testified that James Coble cocked his gun but did not present it. That defendant then stepped back two or three steps, cocked his gun, pointed it at Monroe Coble, and at that time deceased ran in between defendant and Monroe Coble and said, 'No shooting here,' and caught hold of the end of the defendant's gun. Whereupon Monroe Coble rushed upon James Coble, striking at him with both hands, and Henry Amick, his gun in his hands, also rushed upon him. Amick passed Monroe Coble and caught hold of the barrel of James Coble's gun and jerked it violently three or four times. The gun was discharged and killed Henry Amick, and immediately he fell to the ground."

The defendant, James Coble, stated he did not say or do anything

to provoke the assault upon him by Monroe Coble; that he declined Monroe's invitation to go into the woods and fight; that he did not cock the gun; that he did not pull the trigger or discharge the gun, but that it was discharged by the violent wrenching and pulling the gun by Henry Amick; that it was old and frequently had gone off before accidentally.

The judge, in reciting the State's evidence, further says that "Coble had been asked to leave by Greeson." This appears from the context to have been Coble, the defendant, and not Monroe Coble, the man with whom he had a quarrel. The defendant was convicted of manslaughter and sentenced to two years in the State's Prison. Appeal by defendant.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*W. P. Bynum and R. C. Strudwick for defendant.*

CLARK, C. J. The exceptions are to the refusal of a motion to non-suit and to the following paragraphs in the charge: "Now if you should find beyond a reasonable doubt that a sudden quarrel arose between these men, and that in the heat of passion and in sudden fury because of things that were said to him by these other men or done to him, or by any combat which came on between them in which they engaged suddenly about matters, this defendant was at fault in entering into and fighting in combat willfully, fought willfully and wrongfully, that is, not in self-defense, and in the heat of passion slew the deceased, then you would return a verdict of guilty of manslaughter."

Also to the following charge: "Manslaughter may be committed also if a person by the careless, negligent use of a firearm, and in the presence of other persons, either through carelessness or negligence, wanton, reckless disregard of the safety of other persons, points a firearm at them and handles it in such reckless, negligent manner as that it is exploded and causes the death of another. That would be manslaughter, although no death may have been intended or injury intended."

And again to the following part of the charge: "Now a person cannot plead self-defense if they are at fault in bringing on the difficulty, by their own conduct in engaging in and bringing on the difficulty. If they cause another to assault them they cannot plead self-defense or if they enter into a combat or fight willingly or wrongfully. A person in order to plead self-defense must be without fault in bringing on or provoking the difficulty before he can justify the use of force, or he must in good faith abandon the difficulty after it has started, or retreat as far as he can with safety, and then he can turn and defend himself by using such force as is apparently necessary."

These four assignments of error are the only ones set out in the defendant's brief and the others therefore are abandoned. Rule 34, 174 N. C., 837. We find no error in either of these particulars.

This case differs from *S. v. Turnage,* 138 N. C., 566, for the judge here left the contention of the defendant that the gun was accidentally discharged to the jury, as appears in the charge as set out in the record, but in other respects the law in that case applies to this.

At common law and by Rev., 3632, one who points a loaded gun at another, though without intention of discharging it, if the gun goes off accidentally and kills, it is manslaughter. *S. v. Stitt,* 146 N. C., 643. In *S. v. Turnage,* 138 N. C., 566, *supra,* the Court said: "Where the evidence is conflicting, or where the facts testified to are such that reasonable minds may draw different inferences therefrom, the case should be submitted to the jury, with appropriate instructions as to the law, together with the contentions of both sides arising on the evidence."

This was done by the judge in this case. In *S. v. Limerick,* 146 N. C., 651, *Hoke, J.,* says: "If the prisoner intentionally pointed the gun at the deceased and it was then discharged, inflicting the wound of which he died, or if the prisoner was at the time guilty of culpable negligence in the way he handled and dealt with the gun, and by reason of such negligence the gun was discharged, causing the death of the deceased, in either event the prisoner would be guilty of manslaughter, and this whether the discharge of the gun was intentional or accidental."

In *S. v. Trollinger,* 162 N. C., 619, there was no evidence of any ill-feeling between the parties. "There had been no fuss of any kind. The crowd was laughing and talking." Here the crowd was at an illicit still, all hands apparently drinking, and the defendant, James Coble, had prepared his gun to defend himself, according to his statement, from an attack which was about to be made upon him by Monroe Coble with his bare hands. This threat on the part of James to shoot Monroe was so imminent that the deceased, Henry Amick, rushed in between them crying out, "No shooting here." The deceased had a gun in his hand, but it is clear from the evidence that he made no attempt to use it. The witnesses do not make the transaction entirely clear, but the witness stated "Amick passed Monroe Coble and caught hold of the barrel of James Coble's gun and jerked it violently three or four times. The gun was discharged and killed Henry Amick, who immediately fell to the ground." The judge properly submitted the case to the jury. He could not have told them that the defendant was or was not guilty of manslaughter upon the evidence, which is that he pointed the gun at Monroe Coble.

The first two exceptions to the charge cannot be sustained. The

third paragraph of the charge excepted to is sustained by *S. v. Medlin,* 126 N. C., 1127, and cases there cited; *S. v. Garland (Hoke, J.),* 138 N. C., 678, cited and approved *S. v. Cox,* 153 N. C., 643; *S. v. Ray,* 166 N. C., 431; *S. v. Kennedy,* 169 N. C., 329; *S. v. Crisp,* 170 N. C., 793.

A careful review of the charge shows that the judge fully and carefully presented the case to the jury. His charge as to manslaughter on a sudden quarrel is sustained by the latest case, *S. v. Merrick,* 171 N. C., 788, and others there cited. His charge upon involuntary manslaughter through the negligent use of the gun is correctly stated. The evidence that the defendant cocked and presented the gun at Monroe when Amick, in attempting to prevent the killing of Monroe, rushed in and grasped the gun and in the struggle was himself shot, was evidence of a reckless disregard of Amick's life and of an unlawful act in pointing the gun. The charge as to the defendant's right to defend himself after provoking the difficulty by pointing the gun or otherwise is sustained by the cases above cited and by the latest case on the subject, *S. v. Wentz,* 176 N. C., 749.

The jury upon the evidence might have drawn the inference fairly that the discharge of the gun was a wilful act on the part of the defendant, though he testified to the contrary. The evidence was sufficient to be submitted to the jury and authorized them to draw the inference of which their verdict was the result, and in the law laid down by the court we find

No error.