This is an action of slander.
Plaintiff alleged in his complaint that he resides in Pasquotank County, and has lived there since he was twelve years of age, he now being fifty-two years old, and that he has always borne a good character and reputation among his neighbors and in the community where he made his home, and that he deserved the same.
That the defendant resides in Elizabeth City, North Carolina, and has for a number of years.
That in December of the year 1920 the defendant came to the home of the plaintiff and, in the presence of John Baker and divers other persons, spoke of and concerning the plaintiff in the following language: "You are stealing my corn and carrying it away"; and defendant asked the plaintiff didn't he (plaintiff) promise not to move any of the crops before he had settled up with him (defendant), and plaintiff replied: "I have not removed an ear of corn, Mr. Winslow." Defendant replied: "You are the lyingest and most vicious old devil I ever met up with — you have been stealing my rent corn all the year and attending your crop on it, and lying about it. You are a damn old lying, thievish rascal." The plaintiff ordered the defendant to go into the road, and he left and went into the road, and then returned and said, "I hate to say so, but you are a damned old lying son of a bitch."
That the defendant intended to charge, and did charge, this plaintiff as being a thief, and guilty of the high crime of larceny.
That the defendant intended to charge, and did charge, the plaintiff with the crime of larceny, to humiliate and defame and ruin his good name and character among his fellow-men.
That the charges made by the defendant were false and malicious, and were made for the purpose of humiliating and degrading the plaintiff, and to ruin his good name and fame in the community in which he lives.
That by reason of the defendant's malicious, slanderous, and false charges made against this plaintiff, he has been greatly damaged.
Plaintiff further alleges that he has suffered damages in a large sum for which he prays judgment.
The charge relating to stealing the crops grew out of the relations between the parties, the defendant being the landlord, or principal, and the plaintiff his tenant, or cropper, the charge being that plaintiff had stolen a part of the crop which belonged to the defendant.
Defendant answered and denied the alleged slander. He admitted that the plaintiff now resides in Pasquotank County, North Carolina; that the defendant had not sufficient knowledge or information to form *Page 4 
a belief of the other allegations set out in the complaint, as to the plaintiff's former character and reputation, and therefore denies the same.
Defendant then answers further that, again insisting that he had made no such charges against the plaintiff as outlined and set forth in the complaint, this defendant insists that each and every utterance he has made of and concerning the plaintiff at any time has been only of such character as is consistent with the truth, and was true in every particular.
That plaintiff, while a tenant of defendant, without paying his rent and advancements, and without notifying defendant, and against defendant's express orders, and in violation of his agreement, had removed, or caused or permitted to be removed, a part of the crops. All of which this defendant pleads in mitigation, and pleads, as well, the truth of any utterances made by him in justification and bar of plaintiff's right of recovery.
There was evidence tending to support the allegations and denials of the respective parties. The jury returned the following verdict:
"1. Did defendant, in substance, speak of the plaintiff the language alleged in the complaint? Answer: `Yes.'
"2. If so, was same false? Answer: `Yes.'
"3. What damages, if any, is plaintiff entitled to recover? Answer: `$1,925.'"
Judgment was entered upon the verdict, and the defendant appealed, after assigning errors.
After stating the case: We will consider only the exceptions mentioned and discussed in the appellant's brief, the others being abandoned either expressly or by the terms of our rule. Rule 34 (174 N.C. 837); S. v.Coble, 177 N.C. 588; S. v. Henderson, 180 N.C. 735.
The defendant's first exception, as stated in the record and his brief, was taken to that part of the charge of the court as to the damages, the particular ground of the objection being that the court, in its instructions, permitted the jury to include in the damages, those of the plaintiff's mental anguish or suffering. The charge is clearly sustained by the authorities. In Fields v. Bynum, 156 N.C. 413, it being an action for slander, we held that general damages include actual or compensatory damages, and embrace compensation for those injuries which the law will presume must naturally, proximately, and necessarily result from the utterance of words which are actionable per se, such as the charge made in this case. Such damages include injury to the feelings *Page 5 
and mental suffering endured in consequence. General damages need not be pleaded or proved. 18 A. E., 1081, 1082, 1083, and cases cited in notes. That case was approved in Barringer v. Deal, 164 N.C. 246, which also was an action for slander. In our case the verdict finds that the words, which in law are actionable per se, were uttered by the defendant, and that they were false. The law, therefore, implies malice, which entitles the plaintiff to actual or compensatory damages. Malice, in this connection, and within the scope of the issues, does not necessarily mean personal ill-will, but a wrongful act, knowingly and intentionally done the plaintiff without just cause or excuse, and the law implies this kind of malice in actions for slander when the words falsely spoken of and concerning the plaintiff are actionable per se. But punitive or exemplary damages also may be awarded, in the sound discretion of the jury, and within reasonable limits, but the right to punitive damages does not attach, however, as a conclusion of law, because the jury have found the issue of malice in such action against the defendant. The right under certain circumstances to recover damages of this character is well established with us. But they are not to be allowed unless there is an element of fraud, malice, gross negligence, insult, or other cause of aggravation in the act which causes the injury. Holmes v. R. R., 94 N.C. 318. They are not to be included in the damages by the jury as a matter of course simply because of the slander, but only when there are some features of aggravation, as when the wrong is done willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights. Ammons v. R. R., 140 N.C. 200 (majority opinion byJustice Hoke); Stanford v. Grocery Co., 143 N.C. 419, 427. The rule as to compensatory damages is also stated there. As said by the Chief Justice
in Osborn v. Leach, 135 N.C. 628: "Where the facts and nature of the action so warrant, actual damages include pecuniary loss, physical pain, and mental suffering." And again: "Compensatory damages include all other damages than punitive, thus embracing not only special damages as direct pecuniary loss, but injury to feelings, mental anguish, etc.," citing 18 A. E., (2 ed.), 1082; Hale on Damages, pp. 99, 106. And, as directly pertinent to the charge upon this question to which exception was taken, we may conveniently and appropriately refer now to the Holmes case,supra, where it was held that if there is rudeness or insult or "aggravating circumstances calculated to humiliate or disgrace the plaintiff, or party injured, punitive damages may be added to those which are merely actual or compensatory." Rose v. R. R., 106 N.C. 170; Knowlesv. R. R., 102 N.C. 66. Other cases to the same effect upon the questions of compensatory and vindictive or punitive damages in actions, and especially in slander, are Hamilton v. Nance, *Page 6 159 N.C. 56; Cobb v. R. R., 175 N.C. 132; Hayes v. R. R., 141 N.C. 199;Smithwick v. Ward, 52 N.C. 64; Bowden v. Bailes, 101 N.C. 612; Cotton v.Fisheries Products Co., 181 N.C. 151. The Court, by Justice Stacy, in the recent case of Cotton v. Fisheries Products Co., supra, said: "The defendants' eighth and last exception relates to the charge on punitive damages. The basis of this assignment is that there is no evidence from which the jury would be justified in awarding such damages, and that it was, therefore, error to instruct them upon the subject. We think his Honor properly submitted this phase of the case to the jury for their consideration. Not only did the language of defendant's employees amount to a charge of larceny, actionable per se under our law, but the accompanying acts in causing plaintiff's goods to be opened publicly and searched in the presence of divers persons gave such pronounced color and tone to the entire setting of the case as to warrant the jury in assessing exemplary damages. Punitive damages, sometimes called smart money, are allowed in cases where the injury is inflicted in a malicious, wanton, and reckless manner. The defendants' conduct must have been actually malicious or wanton, displaying a spirit of mischief towards plaintiff, or of reckless and criminal indifference to his rights. When these elements are present, damages commensurate with the injury may be allowed by way of punishment to the defendants. But these damages are awarded on the grounds of public policy, for example's sake, and not because the plaintiff has a right to the money, but it goes to him merely because it is assessed in his suit. In a proper case, like the one at bar, both the awarding of punitive damages and the amount to be allowed, if any, rest in the sound discretion of the jury," referring to several of the cases we have cited above. So that it follows from the settled principles of the law we have shown to be applicable here that we cannot sustain the defendant's first assignment of error. The two cases cited by his counsel in his brief (Wilkie v. R. R., 128 N.C. 113, andSmith v. R. R., 126 N.C. 712), as to damages for mental suffering, do not support the exception and relate to a different principle that the one involved here. The learned judge correctly charged the jury as to compensatory damages, allowing them to include therein those for mental anguish.
The next exception is equally untenable. This exception, as stated by plaintiff's counsel, was taken to that portion of the charge of the court which permits a recovery of punitive damages if the jury should find defendant, in uttering the words, "was actuated by malice." The ground of objection to the charge being the failure of the court to distinguish between implied malice (for which punitive damages are not recoverable) and actual malice, upon which alone such damages may be predicated. For this he cites Stanford v. Grocery Co., 143 N.C. 428. But *Page 7 
that case does not uphold his contention, and is irrelevant to it. There the judge failed to distinguish between implied malice and actual malice, in the sense of personal ill-will, when charging the jury upon the question of punitive damages, but left the jury to infer that imputed malice, necessary only to fix responsibility, was sufficient to justify and award of punitive damages. The Court said in that case that the term "malice" as used here, in reference to the question of punitive damages, unlike its meaning in the issue fixing responsibility, means actual malice in the sense of personal ill-will, and the jury should be instructed that if they find the issue fixing responsibility in favor of the plaintiff, they shall award him compensatory damages, and if they further find that the wrongful act was done from actual malice in the sense of personal ill-will, or under circumstance of insult, rudeness, or oppression, or in a manner which showed a reckless and wanton disregard of the plaintiff's rights, they may, in addition to compensatory, award punitive damages, citing Holmes v. R. R., supra; Ammons v. R. R., supra;Bowden v. Bailes, 101 N.C. 612; Kelly v. Traction Co., 132 N.C. 369; S.c., 133 N.C. 418; 1 Joyce on Damages, sec. 442, citing numerous authorities; 19 A. E., 704. But the presiding judge (Hon. O. H. Allen) made no such mistake in this case. He had clearly defined the kind of malice that would fix liability in law and entitle the plaintiff to actual or compensatory damages, and he did so substantially, at least, in accordance with correct principles. It is said in 25 Cyc., pp. 536, 537, 538: "In most jurisdictions, exemplary, punitive, or vindictive damages are recoverable in actions for defamation of character. In some jurisdictions, however, recovery is limited to actual or compensatory damages, and no punitive or exemplary damages are recoverable. In no case are such damages allowed as a matter of right, but their recovery rests in the sound discretion of the jury. If express malice on the part of defendant is shown, exemplary or punitive damages are proper. So, if the defamation was recklessly or carelessly published, punitive damages may properly be awarded as well as where the defamation was induced by the personal ill-will of defendant. On the other hand, there are many authorities to the effect that if express malice or recklessness equivalent thereto is not shown on the part of defendant, exemplary damages cannot be awarded. In some other jurisdictions it is held that where malice exists exemplary damages may be given, and that it is immaterial whether the malice is actual or implied in law." But in this jurisdiction, where there is actual malice (as contra distinguished from imputed malice, or malice implied by the law from intentionally doing that which in its natural tendency is injurious), the jury may award punitive damages. This has long since been settled by numerous of our decisions. Gilreath v. Allen, 32 N.C. 67; Bowden v. Bailes, 101 N.C. 612; *Page 8 Upchurch v. Robertson, 127 N.C. 127; Stanford v. Grocery Co., supra; 17 R.C.L., sec. 202. The following instruction of the court (Hoke, J., presiding), in Upchurch v. Robertson, supra, was approved by this Court, when it said: "The instruction was also correct when the court refused to charge the jury that there was no evidence of actual damage to the plaintiff, and therefore the jury could not award to the plaintiff vindictive damages. He properly instructed them that `the damages were very much in the discretion of the jury. If the first issue was answered "Yes," they could award the plaintiff what in their judgment was a full compensation for injury; and, if satisfied by the greater weight of evidence that the charge was made by defendant from personal malice, with a design and purpose to injure the plaintiff, or if in the judgment of the jury the charge was made in such manner that it showed a reckless and wanton disregard for plaintiff's rights, the jury might increase the amount awarded in compensation by exemplary or punitive damages.'"127 N.C. at p. 129. In his charge to the jury in this case, the court, after explaining malice in law which entitles the plaintiff to actual or compensatory damages, referred to the question of punitive damages, and, while the judge did say to the jury that the plaintiff could recover only compensatory damages, and not punitive damages, "unless they find that the defendant was actuated by malice," this meant more than malice in law, and manifestly referred to express or actual malice, or malice in fact. The judge had already defined very fully the term, "implied malice," as entitling the plaintiff to compensatory damages, and in further charging the jury, he could not have referred to anything but express malice, as being that which actuated, which means "incited" or "instigated," defendant to commit the wrong. Besides, the judge afterwards made his meaning perfectly clear, when he said to the jury, if they found that the circumstances showed aggravation and malice, exemplary damages could also be awarded. While, perhaps, the difference between the two kinds of malice could have been more sharply and distinctly drawn, it was sufficiently done to prevent misunderstanding.
The next exception is taken to that supposed failure of the court to place the burden of proof as to the third issue upon the plaintiff. Reading and interpreting the charge as a whole, it is clearly to be inferred that this was done, expressly as to the first two issues, and, by clear implication, as to the third. An intelligent jury could not have concluded, under the charge, that the burden was on the defendant to prove the damages, but that it rested upon the plaintiff himself. If the defendant desired more specific instructions, he should have asked for them. Simmonsv. Davenport, 140 N.C. 407; S. v. Jones, 182 N.C. 785.
The next exception was taken to the refusal of the court to set aside the verdict because it was what is called a "quotient verdict." The *Page 9 
motion was based on the affidavit of the clerk of the court that R. L. Griffin and two other jurors said in his presence and hearing that each of the jurors stated in writing what he was willing to give, the several amounts being then added together and the result divided by twelve, and that the jury returned as their verdict the amount so found. The affidavit of the clerk, the record states, was admitted and considered by the court over the objection of the plaintiff. The judge declined to hear or consider the affidavits of jurors upon this question, and made this entry in the minutes of the court: "The court heard and considered the affidavit of the clerk, and found the facts to be true as therein stated, and that the verdict was arrived at in the manner described. Upon this finding of fact, the court declined, as a matter of law, to set aside the verdict. The court found as a fact that there was no influence brought upon the jury, or misconduct on the part of the jury in arriving at their verdict, other than as set out in the above findings." The affidavit of the clerk as to what the jurors said was incompetent, and should not have been heard, or considered by the judge. If the jurors could not be heard to impeach their own verdict directly by affidavits, we are unable to understand how it could be done indirectly by affidavit as to what three of them had said in the hearing of the clerk. This is rank hearsay, and the court will not listen to what they thus say when, if they had been under oath, and their evidence subjected to the ordinary tests, they would not be heard. It is familiar learning that jurors cannot be heard to impeach their verdict. If that were allowed, law-suits would seldom be determined. Coxe v. Singleton, 139 N.C. 361-363. A juror cannot be heard to impeach the verdict returned into court after its record. The principle, succinctly stated in Bishop v. State, 9 Ga. 121, (4), that "the affidavit of a juror will not be received to impeach his verdict," has been reiterated too often to permit of space for citations. Redfearn v. Thompson, 10 Ga. App. 550, at p. 558. There are many cases in this and other jurisdictions, decided with substantial uniformity, to the same effect.
The record states that the court declined, as a matter of law, to set aside the verdict. By this the judge meant that while he had found the affidavit of the clerk to be true, it was not competent for him to consider it, on the motion to set aside the verdict, because otherwise it would, in effect, allow jurors to impeach their own verdict, which they cannot do. As thus understood, the ruling was correct. Purcell v. R. R., 119 N.C. 732;McDonald v. Pless, 268 U.S. 264 (59 L.Ed., 1300). The judge should have refused to consider the affidavit at all, and he practically did so.
The last exception is to the admission of testimony concerning the wealth of the defendant. This was competent for the jury to consider on the question of punitive damages. 17 R.C.L., sec. 201; Reeves v. *Page 10 Winn, 97 N.C. 246 (2 Am. St. Rep., 287); Bowden v. Bailes, 101 N.C. 612;Tucker v. Winders, 130 N.C. 147; Cotton v. Fisheries Products Co.,181 N.C. 152; Harman v. Cundiff, 82 Va. 239; Dandall v. Evening NewsAsso., 97 Mich. 136; Holmes v. Holmes, 64 Ill. 294. "Whenever punitive damages may be awarded, evidence of the financial condition of the defendant is admissible in behalf of the plaintiff," per Allen, J., inArthur v. Henry, 157 N.C. 393, 404, citing Tucker v. Winders, supra.
We have held that the correct issues in actions to recover damages for slander, where the words alleged are actionable per se, and in which justification is not pleaded and privilege is not claimed, are:
1. Did the defendant speak of and concerning the plaintiff the words in substance alleged in the complaint?
2. If so, what damage is the plaintiff entitled to recover?
If the first issue is answered "No," the case is at an end. If answered "Yes," the law, in the absence of justification, says that the charge is false and malicious, and it is then the duty of the jury to award compensatory damages, and they may, in addition, award punitive damages if there is actual malice, which may be inferred by the jury in some cases from the circumstances. Stanford v. Grocery Co., 143 N.C. 419.
If justification is pleaded, the issues are:
1. Did the defendant speak of and concerning the plaintiff the words in substance, as alleged in the complaint?
2. If so, were they true?
3. What damages, if any, is plaintiff entitled to recover?
If the first issue is answered "No," or the second "Yes," there can be no recovery; and if the first is answered "Yes," and the second "No," the jury may award damages. This is true because the utterance of words actionable per se implies malice, and in the absence of a plea of justification, or when the plea is entered and the issue is answered against the defendant, the law says the words are false. Hamilton v. Nance,159 N.C. 59. This correctly summarizes the questions to be determined in such cases, where both compensatory and punitive damages are claimed. The jury in this case have found that there was no justification for the slander uttered by the defendant of and concerning the plaintiff, so that under our formula as to the issues, he was entitled to recover compensatory damages, and if he showed actual malice, he was also entitled to have the question of punitive damages submitted to the jury, and they may consider the wealth of the defendant upon the question of punitive damages. It was held in Harman v. Cundiff, supra: "If they find from the evidence that the defendant spoke of and about the plaintiff the defamatory words charged in the declaration, with actual malice *Page 11 
towards the plaintiff, they may give exemplary damages, and in ascertaining the damages they shall consider the plaintiff's standing and that of the defendant, and the wealth of the defendant is only to be considered so far as it tends to show the defendant's rank and influence in society, but not as showing his ability to pay."
The case was hotly contested throughout, but those considered by us embrace all of the material exceptions upon which reliance appears to have been placed by the defendant, and we find that none of them is tenable, for the reasons we have stated.
The words of the defendant, used by him in the presence of others, which it was intended they should, and which they did hear, the jury said were not only not justified but false, and besides being unjustifiable and false, they were uttered maliciously about the plaintiff before bystanders, and to humiliate and degrade him among his friends and neighbors there, and they no doubt had the intended effect. It is no wonder that the jury awarded the plaintiff a full verdict. He appears to have deserved it.
There is no error in the case, or record, and it will be so certified.
No error.